2015 PA Super 187

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| QU'EED BATTS | |
| Appellant | No. 1764 EDA 2014 |

Appeal from the Judgment of Sentence May 2, 2014
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0001215-2006

BEFORE:  ALLEN, J., MUNDY, J., and FITZGERALD, J.[*]

OPINION BY MUNDY, J.:                    **FILED SEPTEMBER 04, 2015**

Appellant, Qu'eed Batts, appeals from the May 2, 2014 aggregate judgment of sentence of life imprisonment without the possibility of parole, which was reimposed after our Supreme Court vacated the decision of a prior panel of this Court and remanded to the trial court for resentencing. After careful review, we affirm.

We summarize the relevant facts and procedural history as follows.  A jury found Appellant guilty of first-degree murder, attempted murder, and aggravated assault.[1]  These convictions arose from a February 7, 2006 gang-related shooting.  On that day, Appellant, then 14 years old, shot two

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2501, 901, 2702(a), respectively.

other teenage boys, Corey Hilario and Clarence Edwards, on the front porch of Edwards' residence. Appellant first shot 18-year-old Hilario in the back as he attempted to escape, causing serious bodily injuries from which Hilario ultimately recovered. Appellant then fatally shot 16-year-old Edwards, who had fallen, twice in the head.

After an investigation, police apprehended Appellant, who, during an interview, eventually confessed to shooting Edwards and Hilario. Appellant admitted he shot Edwards and Hilario, but claimed he only did so because he believed an older gang member, Vernon Bradley, would kill him if he did not follow Bradley's orders to shoot the two other young men.

Appellant explained that he had recently been inducted into a gang, the Bloods. On the night of the shooting, he was a passenger with Bradley and other members of the Bloods in a vehicle driven by Rasheeda McClain. The gang members drove to Edwards' residence, where McClain identified Edwards and Hilario as two boys who had previously robbed her. Appellant did not know either of the victims. Bradley then asked which gang member would "put work in," and gave Appellant a gun and a mask.

Appellant exited the car in front of Edwards' house and put on the mask and a glove. McClain drove the car down the block and parked at the corner to wait for Appellant. Appellant then walked up the front steps of the house and onto the porch, where Hilario, Edwards, and Edwards' father were present. Appellant ordered the three men to get down. Edwards' father

escaped into the house. As Hilario attempted to follow Edwards' father, Appellant shot him in the back, but Hilario still managed to make it inside the house. Appellant then turned to Edwards, who had fallen and was lying on the porch. Appellant stood over Edwards and shot him twice in the head. Appellant then ran back to the car, and the group drove away. Edwards died at the hospital. Because of the shootings, Appellant was promoted to the higher rank of "universal sergeant" within the gang.

The Commonwealth charged Appellant with the above-listed offenses and two counts of criminal conspiracy.[2] Because Appellant was charged with murder, the case was automatically placed in the jurisdiction of the criminal court. *See* 42 Pa.C.S.A. § 6302 (excluding murder from the definition of a "delinquent act"); *id.* § 6322 (providing that a case charging a child with murder may be transferred to the juvenile court if the child shows that the transfer serves the public interest based on the factors in 42 Pa.C.S.A. § 6355(a)(4)(iii). After an extensive evidentiary hearing on Appellant's motion to transfer the case to the juvenile justice system under Section 6322 of the Juvenile Act,[3] the trial court denied Appellant's motion. Hence, Appellant was tried as an adult.

_____

[2] 18 Pa.C.S.A. § 903(a)(1).

[3] 42 Pa.C.S.A. § 6301-6375.

At trial, Appellant testified consistently with the statement he gave to the police and contended that he committed the shootings under duress because he felt he would be killed if he disobeyed Bradley's order to shoot Edwards and Hilario. Despite his duress defense, on July 31, 2007, the jury convicted him of first-degree murder, attempted murder, and aggravated assault. The jury acquitted Appellant of the two conspiracy charges.

On October 22, 2007, the trial court sentenced Appellant to a mandatory term of life imprisonment, which automatically made him ineligible for parole. *See* 18 Pa.C.S.A. § 1102(a)(1) (providing "a person who has been convicted of a murder of the first degree… shall be sentenced to death or a term of life imprisonment…[]"), *superseded, relative to juvenile offenders, by* 18 Pa.C.S.A. § 1102.1; 61 Pa.C.S.A. § 6137(a)(1) (stating that the Board of Probation and Parole cannot release on parole any inmate serving life imprisonment). For the conviction of attempted murder, the trial court imposed a concurrent sentence of six to twenty years' imprisonment.[4]

Appellant filed a timely post-sentence motion, which the trial court denied. Appellant appealed to this Court, arguing, among other things, that the United States Supreme Court's decision in *Roper v. Simmons*, 543 U.S. 551 (2005), made the sentence of mandatory life imprisonment without the possibility of parole for a juvenile unconstitutional. *Commonwealth v.*

---

[4] Aggravated assault merged with attempted murder for purposes of sentencing.

- 4 -

***Batts***, 974 A.2d 1175 (Pa. Super. 2009) (unpublished memorandum at 12) (***Batts I***), *vacated*, 66 A.3d 286 (Pa. 2013) (***Batts II***). In ***Batts I***, this Court noted that ***Roper*** did not apply to this case because ***Roper*** held that the imposition of the death penalty on juvenile offenders was unconstitutional under the Eighth and Fourteenth Amendments, but did not prohibit sentencing juveniles to life imprisonment, and Appellant in this case had received a mandatory life sentence. ***Id.***, *citing* ***Commonwealth v. Wilson***, 911 A.2d 942, 946 (Pa. Super. 2006). Notably, this Court also rejected Appellant's claim that due process required the sentencing court to consider evidence of mitigating factors before imposing a sentence of life without parole on a juvenile. ***Id.*** at 15-16, *citing* ***Summer v. Shuman***, 483 U.S. 66, 76 (1987) (requiring the sentencing court to consider mitigating evidence before imposing the death penalty), *and* ***Harmelin v. Michigan***, 501 U.S. 957, 994-995 (1991) (holding the sentencing court does not have to consider mitigating evidence before sentencing an adult to a mandatory term of life imprisonment without parole). Accordingly, this Court affirmed Appellant's judgment of sentence of mandatory life imprisonment without the possibility of parole.

Our Supreme Court granted allowance of appeal to consider both whether ***Roper*** rendered Appellant's sentence unconstitutional and whether the mandatory nature of the life without parole sentence offended the Eighth and Fourteenth Amendments. ***Batts II***, ***supra*** at 290. The Court held the

case pending the United States Supreme Court's decision in ***Graham v. Florida***, 560 U.S. 48 (2009). ***Id.*** After the Supreme Court issued ***Graham***, holding that sentencing juvenile non-homicide offenders to life imprisonment without the possibility of parole violates the Eighth Amendment, our Supreme Court heard argument in this case. ***Id.*** Following argument, however, the Court again reserved consideration pending the disposition of ***Miller v. Alabama*** and ***Jackson v. Hobbs***, --- U.S. ---, 132 S. Ct. 2455 (2012), which were argued together before the United States Supreme Court. On June 25, 2012, the United States Supreme Court announced its decision in ***Miller***, holding "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders." ***Miller***, ***supra*** at 2469, *citing* ***Graham***, ***supra*** at 74. While the Court declined to categorically ban the sentence of life without parole for juveniles, the Court explained that it believed that such a sentence would be "uncommon." ***Id.*** Nonetheless, the Court confirmed that its holding "d[id] not foreclose a sentencer's ability to make that judgment in homicide cases, [but] we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." ***Id.*** (footnote omitted).

The decision in ***Miller*** unequivocally rendered Appellant's mandatory life without parole sentence unconstitutional. Therefore, our Supreme Court instructed the parties in this case to submit supplemental briefs, addressing

- 6 -

the appropriate remedy for a ***Miller*** violation on direct appeal generally and the relief due to Appellant, as a 14-year-old convicted of first-degree murder specifically. ***Batts II***, ***supra*** at 293.

On October 25, 2012, while ***Batts II*** was awaiting decision, a new statutory sentencing scheme for juveniles convicted of murder, Section 1102.1, took effect. ***See*** 18 Pa.C.S.A. § 1102.1. Section 1102.1 is our legislature's response to ***Miller***, but applies only to juveniles who were convicted of murder on or after June 25, 2012, the date ***Miller*** was issued. ***Id.*** § 1102.1(a). The sentencing scheme in Section 1102.1(a) separates juveniles who have been convicted of first-degree murder into two categories based on their age. ***Id.*** Those who were younger than 15 at the time of the first-degree murder are subject to either life imprisonment without parole, or a term of imprisonment that is at a minimum 25 years to life. ***Id.*** § 1102.1(a)(2). On the other hand, those who were 15 to 18 years old must be sentenced to either life imprisonment without parole or a term of at least 35 years to life. ***Id.*** § 1102(a)(1). The new statute provides that the sentencing court must make findings on the record regarding a number of factors related to the nature of the offense and the offender's characteristics, including specific age-related characteristics, when deciding whether to impose life without parole on a juvenile. ***Id.*** § 1102.1(d).

However, the new Section 1102.1 did not apply to Appellant because Appellant was convicted of murder in 2007, before the effective date of

Section 1102.1. Instead, Appellant was subject to the version of Section 1102 that was in effect at the time of his sentencing. Accordingly, in **Batts II**, our Supreme Court examined "the appropriate remedy for the Eighth Amendment violation that, under **Miller**, occurred when Appellant was mandatorily sentenced to life imprisonment without the possibility of parole upon his conviction for first-degree murder[]" in context of the then-existing statutory scheme in Section 1102. **Batts II**, **supra**.

In **Batts II**, our Supreme Court explained that **Miller**'s holding is narrow, *i.e.*, mandatory sentences of life imprisonment without the possibility of parole are not constitutional when imposed on juveniles convicted of murder. It accordingly rejected Appellant's argument that **Miller** rendered Section 1102 unconstitutional in its entirety as applied to juveniles, reasoning as follows.

> Section 1102, which mandates the imposition of a life sentence upon conviction for first-degree murder, **see** 18 Pa.C.S. § 1102(a), does not itself contradict **Miller**; it is only when that mandate becomes a sentence of life-without-parole as applied to a juvenile offender—which occurs as a result of the interaction between Section 1102, the Parole Code, **see** 61 Pa.C.S. § 6137(a)(1), and the Juvenile Act, **see** 42 Pa.C.S. § 6302—that **Miller**'s proscription squarely is triggered. **Miller** neither barred imposition of a life-without-parole sentence on a juvenile categorically nor indicated that a life sentence with the possibility of parole could never be mandatorily imposed on a juvenile. Rather, **Miller** requires only that there be judicial consideration of the appropriate age-related factors set forth in that decision prior to the imposition of a sentence of life

imprisonment without the possibility of parole on a juvenile.

***Batts II***, ***supra*** at 295-296 (some citations omitted). The Court also noted that it would not expand the holding of ***Miller*** absent a common law history or a legislative directive. ***Id.*** at 296 (citation omitted). Accordingly, our Supreme Court remanded to the trial court with instructions to consider the following age-related factors in resentencing Appellant.

> [A]t a minimum [the trial court] should consider a juvenile's age at the time of the offense, his diminished culpability and capacity for change, the circumstances of the crime, the extent of his participation in the crime, his family, home and neighborhood environment, his emotional maturity and development, the extent that familial and/or peer pressure may have affected him, his past exposure to violence, his drug and alcohol history, his ability to deal with the police, his capacity to assist his attorney, his mental health history, and his potential for rehabilitation.
>
> [***Commonwealth v.***] ***Knox***, 50 A.3d [732,] 745 [(Pa. Super. 2012)] (citing ***Miller***, []132 S. Ct. at 2455) [(remanding for resentencing a juvenile who had previously received a mandatory life without parole sentence in violation of ***Miller***, and instructing trial court to resentence juvenile to either life with parole or life without parole), *appeal denied*, 69 A.3d 601 (Pa. 2013)]. We agree with the Commonwealth that the imposition of a minimum sentence taking such factors into account is the most appropriate remedy for the federal constitutional violation that occurred when a life-without-parole sentence was mandatorily applied to Appellant.

***Batts II***, ***supra*** at 297 (first brackets in original).

Justice Baer authored a concurring opinion, joining in the majority's decision to "remand[] the case to the trial court for it to resentence Appellant based upon his individual circumstances to a sentence of life imprisonment either with the possibility of parole or without the possibility of parole for his conviction of first[-]degree murder committed when he was a fourteen year old juvenile." *Id.* at 299-300 (Baer, J., concurring). Justice Baer further opined that, to achieve uniformity in sentencing, trial courts should be guided by Section 1102.1 in resentencing juveniles whose life without parole sentences violated *Miller*, but would not otherwise be resentenced under Section 1102.1 because they were convicted before *Miller* was decided. *Id.* at 300 (Baer, J., concurring).

On May 2, 2014, after a two-day sentencing hearing, the trial court reimposed a sentence on Appellant of life imprisonment without the possibility of parole. In doing so, the trial court explained that it considered appropriate age-related factors in accordance with *Miller* as instructed by the *Batts II* majority, and it also took guidance from Section 1102.1 as suggested by Justice Baer's concurring opinion. Trial Court Opinion, 8/27/14, at 14, *quoting* N.T., 5/2/14, at 3-8. The trial court noted that in preparation for the resentencing hearing, it had reviewed the record; trial

transcripts;[5] the parties' sentencing memoranda; an October 11, 2013 presentence investigation report; a July 26, 2013 report by forensic psychologist Dr. Kraus; two reports by forensic psychiatrist Dr. Michals of January 16, 2007 and March 12, 2014; a January 12, 2007 report by forensic psychologist Dr. Samuel; a November 21, 2013 report by forensic psychologist Dr. Dattilio, a defense expert; a December 31, 2013 sentencing memorandum by Dana Cook, a defense expert; and an October 29, 2013 letter from Delores Howell, murder victim Edwards' grandmother.

Moreover, at the resentencing hearing, the trial court received the following evidence. The Commonwealth presented Lieutenant Thomas Serbin, Howell, and Dr. Michals. Lieutenant Serbin interviewed Appellant when he was transferred to State Correctional Institution (SCI) Retreat in 2009. Serbin testified that Appellant admitted that he was a Blood and frequently associated with other Bloods in prison. *Id.* at 19-20. Howell spoke of the impact of the murder of her grandson on her and her family. *Id.* at 25.

Dr. Michals, a forensic psychiatrist, testified that Appellant committed the murder consciously, to gain the acceptance of the Bloods. *Id.* at 26. Dr. Michals opined that it is possible for a juvenile to change while maturing,

_____

[5] At the time of remand, the Honorable William F. Moran, who presided over Appellant's 2007 trial, had retired. The president judge reassigned the case for resentencing to the Honorable Michael J. Koury, Jr.

but that altering basic personality traits is very difficult. *Id.* Specifically, he testified that Appellant's basic traits, including anger, instability, impulsivity, poor judgment, and his need to see himself as strong, have persisted over time and are resistant to change. *Id.* Accordingly, Dr. Michals concluded that Appellant is not amenable to treatment or rehabilitation. *Id.*

On the other hand, Appellant presented Dr. Dattilio, the defense's forensic psychologist. Dr. Dattilio testified that Appellant was susceptible to gang influence because he did not have any strong familial bonds during childhood. *Id.* at 20. Dr. Dattilio further explained that Appellant knew killing was wrong, but his youth and inexperience inhibited his judgment. *Id.* Dr. Dattilio related generally that the consensus of research on brain development was that brains of 14-year-olds are not fully formed, which contributes to an inability to make sound judgments. *Id.* at 21. Dr. Dattilio ultimately opined that Batts would be amenable to treatment and rehabilitation even though he showed some hardened personality characteristics, including narcissism and antisocial behavior. *Id.* at 22.

Similarly, the trial court read a letter written by Gregory Troxell, principal of Appellant's middle school and high school, in which Troxell stated that Appellant had taken responsibility for his crimes and worked to rehabilitate himself. *Id.* at 23-24. Likewise, Appellant's mother read a letter in which she admitted Appellant lacked appropriate parenting. She

further asserted that Appellant has matured during his time in prison and now deserves a second chance. *Id.* at 24.

Appellant, testifying on his behalf, apologized to the victim's family for killing Edwards and stated that he felt he had grown into "a very mature young man." *Id.* at 24-25, *quoting* N.T., 5/1/14, at 170-171. Appellant also denied being an active gang member. *Id.* at 25.

The trial court analyzed this evidence according to the sentencing factors listed in Section 1102.1, Section 9721(b) of the Sentencing Code, and the age-specific factors listed in *Knox*, as well as additional factors the trial court found relevant. *Id.* at 28-57; *see also* 18 Pa.C.S.A. 1102.1(d) (listing considerations when determining to impose a sentence of life without parole on a juvenile); 42 Pa.C.S.A. § 9721(b) (stating general sentencing principles); *Knox*, *supra* (providing 13 age-related factors for deciding whether to sentence a juvenile to life without parole). In total, the trial court explained its analysis of 23 factors. Trial Court Opinion, 8/27/14, at 44-57. The trial court then weighed the 23 factors, noting that some were not in Appellant's favor and others were in his favor. *Id.* at 57-61.

Specifically, the trial court found the following factors were not in Appellant's favor: the premeditated, brutal, and senseless nature of the shootings; that Appellant acted alone; Appellant acted without justification as his duress defense was not credible; the particular vulnerability of the two unarmed and unsuspecting teenage victims; Appellant's lack of cooperation

with the police; the impact of the crimes on the victims and community; the need to avoid minimizing the seriousness of the crimes; the uncertainty of Appellant's amenability to treatment; and the need to protect the public. *Id.* On the other hand, the trial court explained that a number of factors were in Appellant's favor, such as his childhood experiences; his age of 14; his lack of a criminal record and his regular school attendance; expert opinions that his psychological condition could improve; and the lack of evidence that he engaged in any violent gang-related activity in prison. *Id.*, *quoting*, N.T., 5/2/14, at 56-65. Further, the trial court considered "the extent to which [Appellant's] youth and immaturity, his troubled childhood, his need for acceptance, and his desire to prove himself contributed to his crime. We have considered those factors, including the disruption and emotional pain Mr. Batts suffered as a child." *Id.* at 60, *quoting*, N.T., 5/2/14, at 56-65.

After weighing all of the sentencing factors, the trial court "conclude[d] that the factors not in [Appellant's] favor significantly outweigh[ed] the factors in his favor." *Id.* at 61, *quoting*, N.T., 5/2/14, at 65. Accordingly, on May 2, 2014, the trial court reimposed a sentence of life without parole on Appellant and a concurrent sentence of ten to twenty years' imprisonment on the attempted murder conviction. *Id.*, *quoting*, N.T., 5/2/14, at 65-68.

On May 12, 2014, Appellant filed post-sentence motions, which the trial court denied the next day. On June 10, 2014, Appellant filed a timely notice of appeal.[6]

On appeal, Appellant presents three issues for our review.

> 1. Whether the evidence was insufficient to establish beyond a reasonable doubt that [Appellant] is one of the rare incorrigible juveniles who deserve a life without parole sentence?
>
> 2. Whether [Appellant]'s re-sentencing proceeding was unconstitutional because it provided him with fewer procedural safeguards than an adult facing capital punishment?
>
> 3. Whether the [Appellant]'s sentence of life without parole violated the Pennsylvania Supreme Court's directive that Defendant be sentenced to "a mandatory maximum sentence of life imprisonment as required by Section 1102(a), accompanied by a minimum sentence determined by the common pleas court upon resentencing?"

Appellant's Brief at 4, *quoting* **Batts II**, **supra** at 297 (footnote omitted).

Appellant's first claim purportedly presents a challenge to the sufficiency of the evidence to support the trial court's imposition of a life without the possibility of parole sentence. Appellant's Brief at 48. Specifically, Appellant contends that this appeal is an opportunity for us to create a different standard of review and burden of proof in cases of

---

[6] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

- 15 -

juveniles receiving sentences of life without parole, because this Court has not yet reviewed the pre-**Miller** discretionary imposition of a life without parole sentence on a juvenile. **Id.** Appellant invites us to heighten our standard of review from the "abuse of discretion" standard under which we review all other criminal sentences and instead provide a *de novo* standard of review for sentences of life without parole imposed on juveniles using a "beyond a reasonable doubt" burden of proof, which is ordinarily reserved for review of death sentences. **Id.** at 47, 49-50. Such standard of review, Appellant reasons, enforces a presumption against imposing life without parole on a juvenile and implements the suggestion in **Miller** that, "we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon."[7] **Id.** at 49, *quoting*, **Miller**, **supra** at 2466. Accordingly, Appellant contends in reviewing a sentence of life without parole imposed on a juvenile, our standard of review should be *de novo*, our scope of review should be plenary, and our standard of proof should be that the Commonwealth must show beyond a reasonable doubt that Appellant is one of the rare juveniles who is "incorrigible." **Id.** at 52.

_____

[7] The Juvenile Law Center, the Defender Association of Philadelphia, and the Pennsylvania Association of Criminal Defense Lawyers have collectively filed an *amici* brief on behalf of Appellant. It reiterates Appellant's contention that **Miller** contained a presumption against a sentence of life without parole for a juvenile, that we must implement, to guide the common pleas courts tasked with determining whether to sentence a juvenile to life without parole. *Amici* Brief at 16-22.

Presuming that we will conduct a *de novo* review of whether the Commonwealth presented evidence sufficient to show beyond a reasonable doubt that Appellant is incorrigible, Appellant proceeds to contest the weight the trial court gave the evidence it reviewed in resentencing Appellant to life without parole. *Id.* at 55-89. Specifically, Appellant contends that the trial court gave too much weight to the Commonwealth's expert, Dr. Michals, who opined Appellant was not amenable to rehabilitation. *Id.* at 55-59. In contrast, Appellant maintains that three other experts concluded that Appellant's development since he committed the murder showed rehabilitation was possible. *Id.* at 59-64. Appellant then points to statements of the trial court that, taken in isolation, arguably do not lead to a conclusion that Appellant is incorrigible. *Id.* at 64-65. Further, Appellant argues that the trial court improperly rejected several mitigating factors, including duress, gang affiliation, peer pressure, youth, immaturity, and youthful incompetence in dealing with law enforcement. *Id.* at 65-85. In addition, Appellant contends the trial court erred in finding that his prison record was an aggravating factor.[8] *Id.* at 85-86.

In response, the Commonwealth asserts that Appellant's first issue is actually a challenge to the discretionary aspects of his sentence, and, as

---

[8] Similarly, the *amici* brief contends that the trial court improperly gave too much weight to the circumstances of the homicide and other aggravating factors and not enough weight to the mitigating factors, including Appellant's youth and immaturity. *Amici* Brief at 26-50.

such, Appellant did not preserve the issue on appeal. Commonwealth's Brief at 7. Specifically, the Commonwealth argues that this Court has treated challenges to the imposition of a sentence of life without parole on a juvenile as going to the discretionary aspects of a sentence. *Id.* at 19, *citing*, ***Commonwealth v. Seagraves***, 103 A.3d 839 (Pa. Super. 2014), *appeal denied*, 116 A.3d 604 (Pa. 2015). As a challenge to the discretionary aspects of Appellant's sentence, the Commonwealth asserts Appellant did not preserve the issue because his brief does not include a concise statement of reasons relied on under Pennsylvania Rule of Appellate Procedure 2119(f). *Id.* at 21.

We agree with the Commonwealth. In ***Batts II***, our Supreme Court instructed the trial court to resentence Appellant after considering age-related factors. ***Batts II***, ***supra***. Specifically, our Supreme Court explained that "***Miller*** requires only that there be judicial consideration of the appropriate age-related factors set forth in that decision prior to the imposition of a sentence of life imprisonment without the possibility of parole on a juvenile." *Id.* at 296, *citing* ***Miller***, ***supra*** at 2467-2468. The ***Batts II*** Court then noted that the appropriate age-related factors for the trial court to consider were contained in ***Knox***. *Id.* at 297, *citing* ***Knox***, ***supra***. Appellant contends we should go beyond the affirmative constitutional holdings of ***Miller*** and ***Batts II*** to impose a heightened burden of proof, and a corresponding more stringent appellate review, in juvenile life without

parole cases, akin to death penalty cases. Absent a specific directive from our Supreme Court or the General Assembly to do so, we decline to expand the narrow holding in **Miller**. **See** PA. CONST. art. V, § 10(c) (providing our Supreme Court has the exclusive "power to prescribe general rules governing practice, procedure and the conduct of all courts"); **Batts II**, **supra** at 296, 299 n.6 (stating the Court's refusal to go beyond the "actual constitutional command [of] **Miller**'s binding holding," and noting the legislature's superior position to implement legal standards to address social policy concerns); **see also** 18 Pa.C.S.A. § 1102.1 (providing that post-**Miller**, before imposing a sentence of life without parole on a juvenile, the court should consider age-related factors).

Accordingly, we review Appellant's challenge to the trial court's weighing of sentencing factors, including those age-related ones, as a challenge to the discretionary aspects of his sentence. **See Seagraves**, **supra** at 842 (reviewing a juvenile appellant's challenge to a life without parole sentence reimposed on remand following **Miller** and **Batts II** for an abuse of discretion); **see also Commonwealth v. Zeigler**, 112 A.3d 656, 662 (Pa. Super. 2015) (noting a discretionary aspects challenge based on a claim of an excessive sentence along with an assertion that the trial court did not consider a mitigating factor may present a substantial question); **Commonwealth v. Zirkle**, 107 A.3d 127, 133 (Pa. Super. 2014) (treating a claim challenging the weight the trial court gave to various sentencing

factors as one going to the discretionary aspects of the sentence). A challenge to the discretionary aspects of a sentence is not appealable as of right; instead, an appellant must petition for permission to appeal. *Commonwealth v. Colon*, 102 A.3d 1033, 1042 (Pa. Super. 2014), *appeal denied*, 109 A.3d 678 (Pa. 2015). We evaluate the following factors to determine whether to grant permission to appeal a discretionary aspect of sentencing.

> Before we reach the merits of this issue, we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue [at sentencing or in a motion to reconsider and modify sentence]; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [as required by Pennsylvania Rule of Appellate Procedure 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. The third and fourth of these requirements arise because Appellant's attack on his sentence is not an appeal as of right. Rather, he must petition this Court, in his [Rule 2119(f)] concise statement of reasons, to grant consideration of his appeal on the grounds that there is a substantial question. [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Edwards*, 71 A.3d 323, 329-330 (Pa. Super. 2013) (citations omitted), *appeal denied*, 81 A.3d 75 (Pa. 2013). Further, "[i]f a defendant fails to include an issue in his Rule 2119(f) statement, and the Commonwealth objects, then the issue is waived and this Court may not

- 20 -

review the claim." ***Commonwealth v. Karns***, 50 A.3d 158, 166 (Pa. Super. 2012), *appeal denied*, 65 A.3d 413 (Pa. 2013).

In this appeal, Appellant filed a timely notice of appeal and preserved his claims in his timely post-sentence motion. However, Appellant's brief did not contain a Rule 2119(f) concise statement of the reasons relied upon for allowance of appeal. The Commonwealth, in its brief, objected to Appellant's failure to include a Rule 2119(f) statement in his brief. Commonwealth's Brief at 21-22. Hence, we are precluded from addressing the discretionary aspects claim.[9] ***See Edwards***, ***supra***; ***Karns***, ***supra***.

In his second issue, Appellant asserts that he was entitled to the same procedural due process afforded to an adult facing capital punishment under the Eighth Amendment and Article I, Section 13 of the Pennsylvania Constitution. Appellant's Brief at 89. Our Supreme Court has explained our standard of review for procedural due process claims as follows.

_____

[9] In his reply brief, Appellant asserts that "[t]he omission of a Rule 2119(f) statement is not fatal if the presence or absence of a substantial question can easily be determined from the appellant's brief." Appellant's Reply Brief at 3, *citing* ***Commonwealth v. Davis***, 734 A.2d 879, 882 n.4 (Pa. Super. 1999). Appellant's reliance on ***Davis*** is misplaced and actually supports our conclusion that we may not review Appellant's claim. In ***Davis***, the Commonwealth did not object to the lack of a Rule 2119(f) statement. ***Id.*** The ***Davis*** court noted, "if the Commonwealth had raised an objection to the Appellant's failure to include a Rule 2119(f) statement in his brief, we would be precluded from addressing the merits of a challenge to the discretionary aspects of sentencing." ***Id.***, *citing* ***Commonwealth v. Minnich***, 662 A.2d 21, 24 (Pa. Super. 1995). In this case, the Commonwealth objected to Appellant's failure to include a Rule 2119(f) statement; therefore, we are precluded from addressing the claim. ***Id.***

A due process inquiry, in its most general form, entails an assessment as to whether the challenged proceeding or conduct offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental and that define[s] the community's sense of fair play and decency. While not capable of an exact definition, basic elements of procedural due process are adequate notice, the opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case.

*Commonwealth v. Wright*, 961 A.2d 119, 132 (Pa. 2008) (brackets in original; internal citations and quotation marks omitted).

Specifically, Appellant contends a juvenile facing a sentence of life imprisonment without parole is entitled to the same due process as an adult facing the death penalty, namely the right to be sentenced by a jury, a burden of proof weighted against the Commonwealth, the requirement of a unanimous verdict, and automatic review by our Supreme Court. Appellant's Brief at 93. Appellant bases his argument on the procedure for sentencing adults to the death penalty given in Section 9711 of the Sentencing Code as well as the United States Supreme Court's opinion in *Graham v. Florida*, 560 U.S. 48, 69-70 (2010), which compared life without parole to the death penalty. *Id.*

We conclude Appellant's argument lacks merit. We cannot discern any constitutional due process basis or statutory ground to provide juveniles facing life imprisonment without parole with the same procedural due process protections as adults facing the death penalty. Indeed, the *Miller*

Court concluded that a mandatory sentence of life without parole for a juvenile was unconstitutional because "**Graham**, **Roper**, and our individualized sentencing decisions make clear that **a judge or jury** must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." **Miller**, **supra** at 2475 (emphasis added). In **Miller**, however, the Court did not hold that a specific procedure to consider age-related factors was constitutionally required.

Further, in **Batts II**, our Supreme Court stated that it was determining "the appropriate remedy for the Eighth Amendment violation that, under **Miller**, occurred when Appellant was mandatorily sentenced to life imprisonment without the possibility of parole upon his conviction for first-degree murder." **Batts II**, **supra** at 293. It remanded with instructions to the common pleas court to resentence Appellant after considering the factors listed in **Knox**. **Id.** at 297. It did not instruct the trial court as to a heightened burden of proof or different procedure for considering those age-related factors.

Moreover, while Appellant is not entitled to a sentence under the new sentencing scheme in Section 1102.1 because he was convicted before its effective date, we find our legislature's response to **Miller** instructive. Section 1102.1(d) instructs the court to make certain findings, including age-related factors, on the record in determining whether to impose a sentence of life without parole on a juvenile. 18 Pa.C.S.A. § 1102.1(d);

*accord Batts II*, *supra* at 300 (Baer, J., concurring) (encouraging the trial court to apply Section 1102.1 to resentence Appellant).

Therefore, we find no constitutional due process ground or statutory support for Appellant's argument that the procedure in Section 9711 should apply to his resentencing. *Cf. Seagraves*, *supra* at 850 (concluding the trial court did not abuse its discretion in reimposing a life without parole sentence on juvenile); *Knox*, *supra* (instructing the trial court on remand to consider listed age-related factors in deciding whether to sentence juvenile to life with or without the possibility of parole). Accordingly, Appellant's argument is without merit because the trial court followed the procedure outlined by our Supreme Court to resentence Appellant after considering age-related factors. *Batts II*, *supra* at 297.

In his third issue, Appellant argues that his sentence was illegal because the trial court did not adhere to the instructions of our Supreme Court that it impose "a mandatory maximum sentence of life imprisonment as required by Section 1102(a), accompanied by a minimum sentence determined by the common pleas court upon resentencing." Appellant's Brief at 94, *quoting Batts II*, *supra*.

Our standard of review for examining the legality of a sentence on appeal is as follows.

> A challenge to the legality of a sentence … may be entertained as long as the reviewing court has jurisdiction. It is also well-established that if no statutory authorization exists for a particular

- 24 -

sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. Issues relating to the legality of a sentence are questions of law[.] … Our standard of review over such questions is *de novo* and our scope of review is plenary.

***Commonwealth v. Cardwell***, 105 A.3d 748, 750 (Pa. Super. 2014) (citations and quotation marks omitted).

In this case, Appellant was subject to a sentence of life without parole pursuant to Section 1102(a) following his conviction for first-degree murder. Before ***Miller***, life without parole was mandatory for a first-degree murder conviction in Pennsylvania. ***Miller*** held a sentence of life without parole could not be mandatory for juveniles. Our Supreme Court specifically held that ***Miller*** did not render Section 1102(a) unconstitutional. ***Batts II***, ***supra*** at 295-296. Further, ***Miller*** did not prohibit either the imposition of a sentence of life without parole or even a mandatory sentence of life with parole for a juvenile. ***Batts II***, ***supra*** at 296. Instead, "***Miller*** requires only that there be judicial consideration of the appropriate age-related factors … prior to the imposition of a sentence of life imprisonment without the possibility of parole on a juvenile." ***Id.***, *citing* ***Miller***, ***supra*** at 2467-2468. Our Supreme Court noted that its holding in ***Batts II*** was coextensive with the protections announced in ***Miller***. ***Id.*** (citation omitted) (refusing to expand the narrow holding of ***Miller***).

Despite this, Appellant contends that his sentence was illegal because our Supreme Court, in ***Batts II***, categorically precluded the imposition of a

- 25 -

sentence of life without parole on juveniles convicted of first-degree murder prior to the effective date of Section 1102.1. In arguing that the trial court is required to impose a minimum sentence (*i.e.*, a sentence of life with parole), Appellant reads one sentence of our Supreme Court's opinion in **Batts II** in isolation and contends that it required the trial court to impose a minimum sentence (*i.e.*, a sentence of life with parole). We decline to read **Batts II** as categorically prohibiting a sentence of life without parole for juveniles sentenced before **Miller**, which would afford those juveniles a greater protection than the United States Supreme Court held was constitutionally necessary in **Miller**, a result that our Supreme Court specifically condemned. **Id.** It would also subject the juveniles convicted before **Miller** was decided and Section 1102.1 was effective to a lesser sentence than those convicted after **Miller** and subject to Section 1102.1. We decline to interpret **Miller** and **Batts II** as categorically prohibiting a sentence of life without parole for juveniles, such as Appellant, convicted of murder before **Miller** was issued. **See Batts II**, **supra** at 296; **see also id.** at 300 (Baer, J., concurring) (stating that the Court's decision was to "remand[] the case to the trial court for it to resentence Appellant based upon his individual circumstances to a sentence of life imprisonment either with the possibility of parole or without the possibility of parole…[]"). Therefore, we conclude that the trial court herein imposed a legal sentence, consistent with **Miller** and **Batts II**, of life without parole after considering

- 26 -

Appellant's individual circumstances, including his age-related characteristics.

Based on the foregoing, we conclude all of Appellant's issues are without merit or not preserved. Accordingly, we affirm the May 2, 2014 judgment of sentence.

Judgment of sentence affirmed.

Judge Allen joins this opinion.

Justice Fitzgerald files a concurring and dissenting opinion.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/4/2015