J. S57009/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                                     :           PENNSYLVANIA
                     v.             :
                                       :
LAMON STREET,                :        No. 952 WDA 2015
                                       :
              Appellant     :


Appeal from the Judgment of Sentence, January 21, 2015,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0011095-2009


BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND STRASSBURGER,* JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED AUGUST 24, 2016**

Lamon Street appeals from the judgment of sentence of January 21, 2015, following imposition of a sentence of life imprisonment without the possibility of parole ("LWOP") in this first-degree murder case. Appellant was a juvenile at the time of the murder, bringing his case within the purview of ***Miller v. Alabama***, ___ U.S. ___, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), and ***Commonwealth v. Batts***, 66 A.3d 286 (Pa. 2013) ("***Batts II***") (invalidating mandatory LWOP sentences for juvenile offenders). After careful review, we affirm.

On a prior direct appeal, this court summarized the facts of this case as follows:

> On May 22, 2009, roughly eight to eleven persons congregated near the outside of a certain residence on Alpine Street in Pittsburgh. Those

---

\* Retired Senior Judge assigned to the Superior Court.

persons included Sofion Moore and his girlfriend, Shavaughn Wallace. Some thirteen gunshots were fired toward the group. When the shooting started, Wallace was inside a car. Moore warned her to lie down. While it is not clear to us if Wallace did so or if she tried to exit the vehicle, she was hit by gunfire. As a result, she and her unborn child died.

Shortly after the incident, Moore told police that he did not know who the shooter was. Later, however, he identified Appellant as the gunman based on a photo array shown to him by police. At Appellant's eventual trial, Moore first indicated he had not seen the shooter. After additional examination, Moore testified that he had seen Appellant firing the gun. Moore's testimony indicated Appellant approached from behind Moore and Moore then turned and saw him.

Some of the persons who had congregated on Alpine Street were members of a gang known as the Hoodtown Mafia. Appellant was associated with the Brighton Place Crips ("the Crips"), a rival gang. There had been various shootings between members of the two gangs leading up to May 22, 2009.

The day after the shooting, Appellant spoke with Dwayne Johnson who was associated with the Crips. Appellant told Johnson, "I did that shit around Hoodtown." N.T., 02/27/12, at 97. Johnson testified that he interpreted Appellant's statement to mean that Appellant had shot Wallace. Appellant also told Johnson words to the effect that Appellant had been "off on pills and he didn't care." *Id.* at 98. The context of the testimony suggested that Appellant meant he was using pills at the time of the shooting. Johnson also testified that, based on his friendship with Appellant, Johnson knew that Appellant had, at times, used the drug Ecstasy.

In or around March 2010, Johnson and Appellant came into contact while they were in a federal correctional facility, both of them having been indicted in a federal case as members of the

Crips. By that time, Appellant had also been charged with homicide in the instant case. The two of them discussed Appellant's homicide case. While they did so, Appellant indicated that, on the date of the shooting, he had been driven to the scene by another member of the Crips named Fifty. Appellant stated that he walked a certain distance, saw a group of people and started shooting. Appellant also explained that he had seen Moore in the group. Moreover, Appellant claimed that Moore could not have seen Appellant shooting because Moore had his back turned toward Appellant. Appellant also explained to Johnson that Wallace did not run during the incident but, instead, was beside a vehicle when Appellant shot her.

Johnson eventually pled guilty to federal charges. At some point, he agreed to testify in the present case. In return for his cooperation, the U.S. Attorney's Office moved to reduce his sentence and the assistant district attorney prosecuting Appellant's case agreed to testify for Moore in federal court with respect to his sentence. Additionally, his family received witness-relocation funds to move from Allegheny County.

Appellant presented alibi testimony from his former girlfriend, Dominique Benton. She claimed Appellant had been with her on the day of the shooting while they watched movies. On cross-examination, the Commonwealth asked Benton if, at some previous time, she had planned to be an alibi witness for another former boyfriend, apparently in an unrelated murder case. Appellant objected to the Commonwealth's question on relevance grounds; the court overruled the objection on the basis that the question was relevant to Benton's credibility.

Appellant was convicted of first-degree murder and related offenses after a non-jury trial. The court sentenced him to life imprisonment without the possibility of parole. Appellant later filed post-sentence motions claiming, *inter alia*, that he

> should receive a new trial because the verdict was against the weight of the evidence. The court denied his motions. Appellant filed this timely appeal.

*Commonwealth v. Street*, 69 A.3d 628, 630-631 (Pa.Super. 2013). In a published opinion, this court affirmed appellant's convictions but vacated the judgment of sentence and remanded for re-sentencing in accordance with *Batts II*. *See Street*, 69 A.3d at 634 ("In *Batts*, the Pennsylvania Supreme Court indicated that the appellate remedy for the unconstitutional imposition of a mandatory life-without-parole sentence upon a juvenile situated similarly to Appellant is a remand for resentencing at which the court must consider the sentencing factors set forth in *Miller* and then resentence the appellant accordingly.").

Prior to re-sentencing, however, appellant filed a motion for a new trial based on after-discovered evidence in the form of a new witness, Sir John Withrow ("Withrow"). The trial court scheduled a hearing on that motion immediately prior to re-sentencing on January 21, 2015. After hearing Withrow's testimony, the trial court denied appellant's motion for a new trial and proceeded to re-sentencing. Dr. Alice Applegate ("Dr. Applegate"), a forensic psychologist, testified on behalf of appellant, and Dr. Bruce Wright, M.D. ("Dr. Wright"), a psychiatrist, testified for the Commonwealth. The trial court also heard testimony from the victim's mother, Carla Gaines-Robinson ("Gaines-Robinson"). After consideration of all the testimony, together with the experts' reports and other material, the

trial court re-imposed a sentence of LWOP. Post-sentence motions were denied, and this timely appeal followed. Appellant complied with Pa.R.A.P. 1925(b), and the trial court has filed a Rule 1925(a) opinion.

Appellant has raised the following issues for this court's review:

> I. Did the lower court impose an unconstitutional and illegal sentence by sentencing [appellant] to [LWOP]?
>
> II. Did the lower court abuse its discretion by giving undue weight to the serious nature of the offense itself when sentencing [appellant] to [LWOP] despite the abundance of mitigating **Miller** factors established at the resentencing?
>
> III. Did the lower court abuse its discretion in denying [appellant]'s motion for a new trial where a new witness whose identity could not have been discerned prior to trial came forward after [appellant]'s conviction and identified another person as the shooter?

Appellant's brief at 5 (capitalization omitted).

In his first issue on appeal, appellant claims that the trial court imposed an illegal sentence when it re-sentenced him to LWOP. According to appellant, because his first direct appeal was still pending when **Miller** was handed down, the trial court was required to impose a minimum sentence. (Appellant's brief at 26-27.)

Our standard of review for examining the legality of a sentence on appeal is as follows.

> A challenge to the legality of a sentence . . . may be entertained as long as the reviewing court has jurisdiction. It is also well-established that if no

- 5 -

statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. Issues relating to the legality of a sentence are questions of law[.] . . . Our standard of review over such questions is *de novo* and our scope of review is plenary.

*Commonwealth v. Cardwell*, 105 A.3d 748, 750 (Pa.Super. 2014), *appeal denied*, 121 A.3d 494 (Pa. 2015) (citations and quotation marks omitted).

Appellant relies on the following language from *Batts II*:

We recognize the difference in treatment accorded to those subject to non-final judgments of sentence for murder as of *Miller*'s issuance and those convicted on or after the date of the High Court's decision. As to the former, it is our determination here that they are subject to a mandatory maximum sentence of life imprisonment as required by Section 1102(a),[1] accompanied by a minimum sentence determined by the common pleas court upon resentencing.

*Batts II*, 66 A.3d at 297.

Recently, in *Commonwealth v. Batts* ("*Batts III*"), 125 A.3d 33 (Pa.Super. 2015), *appeal granted in part*, 135 A.3d 176 (Pa. 2016), this court addressed the identical claim and rejected the appellant's interpretation of *Batts II* as requiring a minimum sentence:

In arguing that the trial court is required to impose a minimum sentence (*i.e.*, a sentence of life with parole), Appellant reads one sentence of our Supreme Court's opinion in *Batts II* in isolation and contends that it required the trial court to impose a minimum sentence (*i.e.*, a sentence of life with

---

[1] 18 Pa.C.S.A. § 1102(a).

parole). We decline to read **Batts II** as categorically prohibiting a sentence of life without parole for juveniles sentenced before **Miller**, which would afford those juveniles a greater protection than the United States Supreme Court held was constitutionally necessary in **Miller**, a result that our Supreme Court specifically condemned. **Id.** It would also subject the juveniles convicted before **Miller** was decided and Section 1102.1 was effective to a lesser sentence than those convicted after **Miller** and subject to Section 1102.1.[2] We decline to interpret **Miller** and **Batts II** as categorically prohibiting a sentence of life without parole for juveniles, such as Appellant, convicted of murder before **Miller** was issued. **See Batts II**, **supra** at 296; **see also id.** at 300 (Baer, J., concurring) (stating that the Court's decision was to "remand[ ] the case to the trial court for it to resentence Appellant based upon his individual circumstances to a sentence of life imprisonment either with the possibility of parole or without the possibility of parole . . . [ ]").

**Batts III**, 125 A.3d at 46.[3]

In his second issue on appeal, appellant challenges the discretionary aspects of his sentence. Appellant alleges that the trial court's sentence of

---

[2]      On October 25, 2012, while **Batts II** was awaiting decision, a new statutory sentencing scheme for juveniles convicted of murder, Section 1102.1, took effect. **See** 18 Pa.C.S.A. § 1102.1. Section 1102.1 is our legislature's response to **Miller**, but applies only to juveniles who were convicted of murder on or after June 25, 2012, the date **Miller** was issued. **Id.** § 1102.1(a).

**Batts III**, 125 A.3d at 38.

[3] On April 19, 2016, the Pennsylvania Supreme Court granted partial allowance of appeal in **Batts III**. However, the court denied the petition for allowance of appeal with regard to this particular issue.

LWOP was manifestly excessive and unreasonable and that the trial court failed to properly consider mitigating evidence, including all of the age-related **Miller** factors.

> Accordingly, we review Appellant's challenge to the trial court's weighing of sentencing factors, including those age-related ones, as a challenge to the discretionary aspects of his sentence. **See** [**Commonwealth v. Seagraves**, 103 A.3d 839, 842 (Pa.Super. 2014), **appeal denied**, 116 A.3d 604 (Pa. 2015)] (reviewing a juvenile appellant's challenge to a life without parole sentence reimposed on remand following **Miller** and **Batts II** for an abuse of discretion); **see also Commonwealth v. Zeigler**, 112 A.3d 656, 662 (Pa.Super. 2015) (noting a discretionary aspects challenge based on a claim of an excessive sentence along with an assertion that the trial court did not consider a mitigating factor may present a substantial question); **Commonwealth v. Zirkle**, 107 A.3d 127, 133 (Pa.Super. 2014) (treating a claim challenging the weight the trial court gave to various sentencing factors as one going to the discretionary aspects of the sentence). A challenge to the discretionary aspects of a sentence is not appealable as of right; instead, an appellant must petition for permission to appeal. **Commonwealth v. Colon**, 102 A.3d 1033, 1042 (Pa.Super. 2014), **appeal denied**, ___ Pa. ___, 109 A.3d 678 (2015). We evaluate the following factors to determine whether to grant permission to appeal a discretionary aspect of sentencing.

> > Before we reach the merits of this issue, we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue [at sentencing or in a motion to reconsider and modify sentence]; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect

> to the discretionary aspects of sentence [as required by Pennsylvania Rule of Appellate Procedure 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. The third and fourth of these requirements arise because Appellant's attack on his sentence is not an appeal as of right. Rather, he must petition this Court, in his [Rule 2119(f)] concise statement of reasons, to grant consideration of his appeal on the grounds that there is a substantial question. [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.
>
> ***Commonwealth v. Edwards***, 71 A.3d 323, 329-330 (Pa.Super. 2013) (citations omitted), ***appeal denied***, 622 Pa. 765, 81 A.3d 75 (2013).

***Batts III***, 125 A.3d at 43-44.

Instantly, appellant filed a timely notice of appeal and preserved his claims in his timely post-sentence motion. Appellant has also included the requisite Rule 2119(f) statement in his brief, in which he argues that the trial court gave undue weight to the seriousness of the offense and ignored mitigating ***Miller*** factors that were established at re-sentencing. (Appellant's brief at 29-30.) These included appellant's early exposure to violence as a juvenile and the poor environment in which he was raised. (***Id.*** at 30.) According to appellant, even Dr. Wright testified that he demonstrated some potential for rehabilitation. (***Id.***) Therefore, appellant contends that the trial court's sentence of LWOP was a ***de facto*** death

sentence and was unnecessary and excessive. (*Id.*) We determine that these allegations raise a substantial question for our review, and we will address appellant's sentencing claim on the merits. *Zeigler*, *supra*; *Commonwealth v. Lewis*, 45 A.3d 405, 411 (Pa.Super. 2012) (*en banc*) (an allegation that the sentencing court focused exclusively on the seriousness of the crime raises a substantial question); *Commonwealth v. Macias*, 968 A.2d 773, 776 (Pa.Super. 2009) ("an averment that the court sentenced based solely on the seriousness of the offense and failed to consider all relevant factors raises a substantial question." (citations omitted)).

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> *Commonwealth v. Rodda*, 723 A.2d 212, 214 (Pa.Super. 1999) (*en banc*) (quotations marks and citations omitted). *See also Commonwealth v. Walls*, 592 Pa. 557, 926 A.2d 957, 961 (2007) (citation omitted) ("An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice bias or ill-will, or such a lack of support as to be clearly erroneous.").

The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is "in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Commonwealth v. Ward*, 524 Pa. 48, 568 A.2d 1242, 1243 (1990); *see also Commonwealth v. Jones*, 418 Pa.Super. 93, 613 A.2d 587, 591 (1992) (*en banc*) (offering that the sentencing court is in a superior position to "view the defendant's character, displays of remorse, defiance or indifference and the overall effect and nature of the crime."). Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review.

*Id.* Nevertheless, the trial court's discretion is not unfettered. "When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant . . . . [A]nd, of course, the court must consider the sentencing guidelines." [*Commonwealth v.*] *Fullin*, 892 A.2d [843,] 847-48 [Pa.Super. 2006].

*Commonwealth v. Coulverson*, 34 A.3d 135, 143-144 (Pa.Super. 2011).[4]

---

[4] We note that one of the issues the Pennsylvania Supreme Court agreed to consider on appeal from *Batts III* is whether a heightened standard of review should apply to juvenile LWOP sentences, rather than the customary abuse of discretion standard. Until our supreme court holds otherwise, we will continue to employ a deferential standard of appellate review. *See Batts III*, 125 A.3d at 43 (rejecting the appellant's argument that a heightened burden of proof, and correspondingly more stringent standard of

In addition, before imposing an LWOP sentence upon a juvenile offender, such as appellant, the trial court must consider certain age-related factors, including his age at the time of the offense, the circumstances of the crime, his past exposure to violence, his family environment, and his rehabilitative potential:

> In **Batts II**, our Supreme Court explained that **Miller**'s holding is narrow, **i.e.**, mandatory sentences of life imprisonment without the possibility of parole are not constitutional when imposed on juveniles convicted of murder. It accordingly rejected Appellant's argument that **Miller** rendered Section 1102 unconstitutional in its entirety as applied to juveniles, reasoning as follows.
>
>> Section 1102, which mandates the imposition of a life sentence upon conviction for first-degree murder, **see** 18 Pa.C.S. § 1102(a), does not itself contradict **Miller**; it is only when that mandate becomes a sentence of life-without-parole as applied to a juvenile offender--which occurs as a result of the interaction between Section 1102, the Parole Code, **see** 61 Pa.C.S. § 6137(a)(1), and the Juvenile Act, **see** 42 Pa.C.S. § 6302--that **Miller**'s proscription squarely is triggered. **Miller** neither barred imposition of a life-without-parole sentence on a juvenile categorically nor indicated that a life sentence with the possibility of parole could never be mandatorily imposed on a juvenile. Rather, **Miller** requires only

---

appellate review, should apply in juvenile LWOP cases, similar to death penalty cases). Moreover, we reject the Commonwealth's suggestion that we should postpone a decision in this case pending our supreme court's resolution of the appeal in **Batts III**.

that there be judicial consideration of the appropriate age-related factors set forth in that decision prior to the imposition of a sentence of life imprisonment without the possibility of parole on a juvenile.

**Batts II**, **supra** at 295-296 (some citations omitted). The Court also noted that it would not expand the holding of **Miller** absent a common law history or a legislative directive. **Id.** at 296 (citation omitted). Accordingly, our Supreme Court remanded to the trial court with instructions to consider the following age-related factors in resentencing Appellant.

> [A]t a minimum [the trial court] should consider a juvenile's age at the time of the offense, his diminished culpability and capacity for change, the circumstances of the crime, the extent of his participation in the crime, his family, home and neighborhood environment, his emotional maturity and development, the extent that familial and/or peer pressure may have affected him, his past exposure to violence, his drug and alcohol history, his ability to deal with the police, his capacity to assist his attorney, his mental health history, and his potential for rehabilitation.

[**Commonwealth v.**] **Knox**, 50 A.3d [732,] 745 [(Pa.Super. 2012)] (citing **Miller**, 132 S.Ct. at 2455) [(remanding for resentencing a juvenile who had previously received a mandatory life without parole sentence in violation of **Miller**, and instructing trial court to resentence juvenile to either life with parole or life without parole), **appeal denied**, 620 Pa. 721, 69 A.3d 601 (2013)]. We agree with the Commonwealth that the

- 13 -

> imposition of a minimum sentence taking such factors into account is the most appropriate remedy for the federal constitutional violation that occurred when a life-without-parole sentence was mandatorily applied to Appellant.
>
> ***Batts II***, ***supra*** at 297 (first brackets in original).

***Batts III***, 125 A.3d at 38-39.

We now turn to the evidence adduced at appellant's re-sentencing. Appellant was just shy of his 18th birthday at the time of the offense, 17 years, 11 months and 3 days old. (Notes of testimony, 1/21/15 at 83.) Dr. Applegate, testifying for appellant, noted that he had no history of animal cruelty, fire-setting, or bed-wetting. (***Id.*** at 52.) Appellant had no history of involvement with Children, Youth and Families. (***Id.***) His IQ was 94, which is considered average. (***Id.***)

Dr. Applegate testified that appellant's mother was 15 years old at the time of his birth. (***Id.*** at 62.) As such, his mother was still developing when appellant was born. (***Id.***) Appellant had to compete with his mother's paramours for affection. (***Id.***) Appellant's father was absent from appellant's life and was also involved with gangs. (***Id.*** at 63.)

When he was 7 or 8 years old, appellant experienced a traumatic event when his uncle was shot. (***Id.***) At the time of the shooting, appellant was riding on his uncle's back. (***Id.***) Appellant related that he was "in shock." (***Id.***) When he was a teenager, a father-figure of appellant's, Michael Gafore, was shot to death. (***Id.*** at 53.) Dr. Applegate testified that

this event had the effect of "catapulting him into a 26-month period of juvenile conduct problems and adjustment disorders." (*Id.* at 52-53.) Dr. Applegate diagnosed appellant with, *inter alia*, anxiety disorder NOS (not otherwise specified) including generalized anxiety, social anxiety, obsessive/compulsive disorder, phobias, mood disorder NOS, and a history of conduct disorder (adolescent onset -- moderate). (*Id.* at 51-52.)

Dr. Applegate acknowledged that appellant's prison record was not exemplary; however, she testified that appellant did not have a documented history of violence prior to the murder of Shavaughn Wallace. (*Id.* at 58-61.) Dr. Applegate testified that in her opinion, appellant is amenable to treatment and could become a productive member of society. (*Id.* at 67.) Dr. Applegate testified that appellant is beginning to show some signs of maturation, including insight into his criminal conduct. (*Id.* at 57-58.)

Dr. Wright testified for the Commonwealth. Dr. Wright noted a history of behavioral problems going back to elementary school. (*Id.* at 103.) In 9th grade, appellant was expelled for possession of marijuana. (*Id.* at 103-104.) Appellant was also charged with drug and gun offenses as a juvenile. (*Id.* at 104.) During his interview with Dr. Wright, appellant acknowledged his participation in the Brighton Place Crips but stated, "We weren't really Crips, we were just a bunch of people. We got labeled Crips." (*Id.* at 106.) Appellant did admit that he carried firearms and earned $6,000-7,000 per week selling drugs. (*Id.*)

Dr. Wright diagnosed appellant with an adjustment disorder with anxiety. (*Id.* at 107.) Dr. Wright noted persistent behavioral problems following incarceration at Allegheny County Jail, as well as at SCI Pine Grove. (*Id.* at 108.) Dr. Wright also noted that appellant's mother tried to smuggle him drugs into state prison, which was evidence of continuing behavioral problems. (*Id.* at 109.) Dr. Wright observed that after the shooting of Wallace, appellant fled and was able to elude arrest for some time, which reflects relatively sophisticated criminal conduct. (*Id.* at 110.)

Dr. Wright testified that appellant has limited insight into the magnitude of his persistent criminal behavior, and cannot be rehabilitated until he accepts responsibility for his actions. (*Id.* at 111.) Dr. Wright acknowledged that appellant obtained an HVAC certificate while incarcerated and that he has "some rehabilitative potential." (*Id.* at 111-112, 118.) However, Dr. Wright testified that previous attempts at rehabilitation have been overwhelmingly unsuccessful. (*Id.* at 112.)

The victim's mother, Gaines-Robinson, also testified regarding the impact appellant's crime has had on her and her family. Gaines-Robinson testified that she and her mother have received grief counseling. (*Id.* at 130.) Since her daughter's murder, Gaines-Robinson was diagnosed with hypertension and is on blood pressure medication. (*Id.*) She no longer feels safe among crowds. (*Id.*) Gaines-Robinson testified to the victim's

outstanding character, intellect, and personality. (***Id.*** at 129.) In her opinion, appellant has shown no remorse for his actions. (***Id.*** at 133.)

After hearing the testimony and arguments of counsel and reviewing the reports, the trial court determined that a sentence of LWOP was appropriate:

> Okay. Mr. Street, I've listened all day to the pros and cons. The things that you have done right apparently in life is [sic] that you haven't killed any animals when you were less than ten and you've gotten a degree in HVAC. However on the other side I have to weigh in to the fact that you were almost 18 years of age. Your criminal history is extensive beginning when you were a very young man. You were a member of a gang. You admitted to making about $6,000 a week selling heroin. I can't imagine how many people were hurt through those activities as well as being the enforcer of the gang. You did do well when you were in placement but however the minute that you were released you went back to your criminal activity including misconduct in jail. But the thing that weighs the heaviest against you is you did shoot a young woman in the back and killed her unborn child. Those people are never getting another chance. I feel that criminal behavior is all you know and I feel you are an accomplished criminal.

***Id.*** at 140-141.

Overall, we cannot say that the trial judge here, the Honorable Donna Jo McDaniel, abused her discretion in re-imposing an LWOP sentence. Appellant was one month shy of his 18th birthday at the time of the crime. He had an extensive juvenile record. He admitted to participating in drug and gang activity. While his childhood is, in many ways, tragic, the

circumstances of this crime were particularly heinous. Appellant shot a pregnant woman in the back, killing her and her unborn child. He then fled the area and evaded law enforcement. Judge McDaniel considered all the *Miller* age-related factors, but ultimately found that an LWOP sentence was appropriate. (Trial court opinion, 11/13/15 at 7.)

Finally, appellant challenges the denial of his motion for a new trial based on Withrow's proffered testimony that appellant was not the gunman.

> To obtain relief based on after-discovered evidence, appellant must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Commonwealth v. Montalvo*, 986 A.2d 84, 109 (Pa. 2009), quoting *Commonwealth v. Pagan*, 950 A.2d 270, 292 (Pa. 2008). "Unless the trial court has clearly abused its discretion in denying a new trial on the basis of after-discovered evidence, its order will not be disturbed on appeal." *Commonwealth v. Cull*, 688 A.2d 1191, 1198 (Pa.Super. 1997), *appeal denied*, 698 A.2d 64 (Pa. 1997) (citation omitted).

Withrow testified that he was incarcerated at SCI Forest when he learned that appellant was serving a life sentence for Wallace's murder. (Notes of testimony, 1/21/15 at 8-9.) According to Withrow, he was walking around the area of Alpine Avenue the evening of May 22, 2009, and

witnessed the shooting. (***Id.*** at 9-11.) Withrow testified that he was in a position to see the shooter's face and it was not appellant. (***Id.*** at 11-13.) Withrow knows appellant from the neighborhood. (***Id.*** at 13.) Withrow testified that he came forward to clear his conscience. (***Id.*** at 20.) Withrow recently converted to Islam and is a "new person." (***Id.***)

Judge McDaniel, who also presided over appellant's non-jury trial, did not find Withrow to be a credible witness. (***Id.*** at 46-47.) It is well settled that credibility determinations cannot be disturbed on appeal. ***See Commonwealth v. White***, 734 A.2d 374, 381 (Pa. 1999) ("[T]here is no justification for an appellate court, relying solely upon a cold record, to review the fact-finder's first-hand credibility determinations."). Furthermore, as Judge McDaniel observes, Terrchell Little ("Little"), appellant's first cousin, offered substantially similar testimony. (Trial court opinion, 11/13/15 at 5.) Little testified that she saw the gunman and it was not appellant. (Notes of testimony, 2/27-29/12 at 144, 148.) She could not identify the shooter, but it was not appellant. (***Id.***) Therefore, Withrow's testimony would have been merely corroborative of Little's testimony.

In addition, as recounted above, Moore identified appellant as the gunman in a photo array and at trial. Johnson also testified that appellant admitted to shooting Wallace. Judge McDaniel, sitting as finder-of-fact, obviously credited this testimony. Therefore, it is highly unlikely that Withrow's testimony would change the verdict. The trial court did not abuse

its discretion in denying appellant's motion for a new trial based on after-discovered evidence.

Judgment of sentence affirmed.

Shogan, J. joins the Memorandum.

Strassburger, J. files a Concurring Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/24/2016

- 20 -