J-S32043-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| OMAR RASHAD HOOKS, | |
| Appellant | No. 1391 EDA 2015 |

Appeal from the Judgment of Sentence April 15, 2015
in the Court of Common Pleas of Delaware County
Criminal Division at No.: CP-23-CR-0002355-2010

BEFORE:  BOWES, J., MUNDY, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                                     **FILED MAY 17, 2016**

Appellant, Omar Rashad Hooks, appeals from the judgment of sentence imposed on April 15, 2015.[1, 2] Appellant was sentenced to a term of imprisonment not less than thirty-five years nor more than life for his jury conviction of murder of the first degree,[3] and a concurrent aggregate sentence of not less than two nor more than four years' incarceration for his

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court imposed the April 15, 2015 sentence after granting Appellant's post-sentence motion filed November 17, 2014, seeking a modification of the sentence imposed on re-sentencing on November 5, 2014.

[2] We have amended the caption in this matter to reflect the April 15, 2015 date on which the trial court re-sentenced Appellant.

[3] 18 Pa.C.S.A. § 2502(a).

conviction of firearms not to be carried without a license, and possessing an instrument of a crime.[4] Appellant challenges the discretionary aspects and legality of his sentence. We affirm, in part on the basis of the trial court opinion.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case. (*See* Trial Court Opinion, 11/05/15, at 1-2). Therefore, we have no reason to restate them here at length.

For the convenience of the reader, we note that on April 17, 2010,[5] Appellant, who was sixteen years old, shot and killed Thomas Green, who was unarmed. Evidence at trial supported the fact that Appellant shot Green in retaliation for Green smacking Appellant in the face and knocking his glasses off during a "slap-box" fight. Testimony also supported the conclusion that Appellant was under the influence of drugs or alcohol before the shooting; however, the jury did not accept the diminished capacity defense which was offered at trial. On December 8, 2011, the jury found Appellant guilty of murder of the first degree, firearm carried without a license, and possessing an instrument of a crime.

---

[4] 18 Pa.C.S.A. §§ 6106, 907 respectively.

[5] Although the trial court opinion indicates that Appellant killed his victim on April 10, 2010, (*see* Trial Ct. Op., at 7), the record is clear that Appellant committed his crime on April 17, 2010. (*See* Trial Ct. Op., at 1).

On January 31, 2012, the trial court sentenced Appellant to a mandatory sentence of life in prison without the possibility of parole for the murder conviction and imposed a consecutive aggregate term of imprisonment of not less than two nor more than five years on the remaining counts.

On direct appeal, a prior panel of this court affirmed Appellant's convictions, but remanded for a new sentencing hearing in accordance with the holdings in *Miller v. Alabama*, 132 S.Ct. 2455 (2012), and *Commonwealth v. Batts*, 66 A.3d 286 (Pa. 2013). (*See Commonwealth v. Hooks*, 91 A.3d 1280 (Pa. Super. 2012) (unpublished memorandum)).

After a sentencing hearing on November 5, 2014, the trial court sentenced Appellant to a term of imprisonment of not less than forty years to life for murder of the first degree and a consecutive aggregate sentence of not less than two nor more than five years' incarceration on the remaining offenses. Appellant filed a post-sentence motion for reconsideration. The trial court held a hearing on Appellant's post-sentence motion on March 11, 2015.

On April 15, 2015, the trial court granted Appellant's motion for reconsideration and modified his sentence for the murder of the first degree conviction to not less than thirty-five years nor more than life imprisonment

and imposed his sentence on the remaining charges concurrently. This timely appeal followed.[6]

On appeal, Appellant raises three questions for our review:

1. Is the sentence imposed illegal given that there is no statutory authorization for a sentence of thirty-five years to life?

2. Did the sentencing court commit abuse of discretion when it based the sentence imposed entirely or in part on the fact that Appellant did not accept responsibility for the crime or show remorse, where Appellant at all times has maintained his innocence of the crime?

3. Did the sentencing court abuse its discretion in imposing a sentence that was overly harsh and manifestly excessive, and based upon the seriousness of the crime alone?

(Appellant's Brief, at 4) (questions renumbered for ease of disposition).[7]

In the first issue, Appellant claims that his sentence of not less than thirty-five years to life imprisonment for murder of the first-degree is an illegal sentence because it lacks statutory authorization. (**See** Appellant's Brief, at 35-42).[8] Appellant concedes that "this very question was presented

_____

[6] Appellant filed his timely Rule 1925(b) statement of errors complained of on appeal on June 16, 2015. **See** Pa.R.A.P. 1925(b). The trial court entered its opinion on November 5, 2015. **See** Pa.R.A.P. 1925(a).

[7] On March 4, 2016, the Commonwealth filed an application for extension of time to file its brief and, thereafter, filed its brief on March 18, 2016. We deem the Commonwealth's brief timely filed *nunc pro tunc.*

[8] We note that Appellant's Rule 1925(b) statement presents five issues, all of which challenge discretionary aspects of the sentence. (**See** Statement of Matters Complained of on Appeal, 6/16/15, at 1-2). Appellant did not present any challenge to the legality of his sentence in his statement; however, challenges to the legality of a sentence cannot be waived. **See**
*(Footnote Continued Next Page)*

[to our Pennsylvania Supreme Court] in [] **Batts**, [**supra**]." (Appellant's Brief, at 41). However, he "requests that this Court revisit the question of an appropriate remedy." (**Id.**). We decline to do so.

Our standard of review for challenges to legality of a sentence is well-settled.

> If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. Moreover, challenges to [a]n illegal sentence can never be waived and may be reviewed *sua sponte* by this Court. An illegal sentence must be vacated.

**Commonwealth v. Randal**, 837 A.2d 1211, 1214 (Pa. Super. 2003) (citations omitted).

In **Batts**, our Supreme Court considered the argument that no statutory authorization existed for sentencing a juvenile for first degree murder, and concluded that juveniles convicted of murder of the first degree prior to **Miller** "are subject to a mandatory maximum sentence of life imprisonment as required by Section 1102(a), accompanied by a minimum sentence determined by the common pleas court upon resentencing." **Batts**, **supra** at 297. The **Batts** Court declined to sentence Batts to the lesser

_____
*(Footnote Continued)*

**Commonwealth v. Foster**, 17 A.3d 332, 343-44 (Pa. 2011) ("failure to . . . include the sentencing issue in a Rule 1925(b) statement . . . is not fatal to the defendant's challenge to . . . legality of sentencing claim for that matter, because the fundamental issue raised concerns the sentencing court's constitutional or statutory authority to act as it did.").

offense of third-degree murder because his conviction for first-degree murder had not been vacated. ***See id.*** at 296-97.

> If a majority of the Justices of this Court, after reviewing an appeal before us (taken either by way of direct appeal or grant of allowance of appeal), join in issuing an opinion, our opinion becomes binding precedent on the courts of this Commonwealth. Our majority opinion is binding not only on the parties before us, under the doctrine of law of the case, but is precedent as to different parties in cases involving substantially similar facts, pursuant to the rule of *stare decisis*[.]

***Commonwealth v. Tilghman***, 673 A.2d 898, 903 (Pa. 1996) (citations and footnotes omitted). Accordingly, Appellant's challenge to the legality of his sentence does not merit relief. ***See Batts***, ***supra*** at 296-97; ***Tilghman***, ***supra*** at 903.

In his remaining two issues, Appellant challenges the discretionary aspects of his sentence. (***See*** Appellant's Brief, at 4).

"A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." ***Commonwealth v. Hoch***, 936 A.2d 515, 518 (Pa. Super. 2007) (citation omitted). In order to reach the merits of such claim, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

*Commonwealth v. Edwards*, 71 A.3d 323, 329-30 (Pa. Super. 2013), *appeal denied*, 81 A.3d 75 (Pa. 2013) (citation omitted).

Here, Appellant timely filed a motion to modify sentence and notice of appeal and included a Rule 2119(f) statement in his brief. (**See** Appellant's Brief, at 20); Pa.R.A.P. 2119(f). Furthermore, an assertion that a sentence is manifestly excessive such that it constitutes too severe a punishment raises a substantial question. **See Commonwealth v. Mouzon**, 812 A.2d 617, 624 (Pa. 2002). Additionally, "an allegation that the court considered an impermissible sentencing factor raises a substantial question." **Commonwealth v. Macias**, 968 A.2d 773, 776 (Pa. Super. 2009). Therefore, we will review Appellant's claim.

Appellant argues that the court erred in imposing his sentence because it considered an impermissible factor, Appellant's lack of remorse, and imposed a manifestly excessive sentence, which was based only on the seriousness of the crime. (**See** Appellant's Brief, at 21-35). We disagree.

Our standard of review of a sentencing challenge is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Glass**, 50 A.3d 720, 727 (Pa. Super. 2012), *appeal denied*, 63 A.3d 774 (Pa. 2013) (citation omitted).

In the instant matter, the sentencing court had the benefit of a Pre-Sentence Investigation Report. We have stated that:

> [w]hen imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. . . . Where the sentencing court had the benefit of a [PSI], we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.

*Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010) (quotation marks and citations omitted).

When sentencing a juvenile for first-degree murder, the Pennsylvania Supreme Court has explained:

> [A]t a minimum [the trial court] should consider a juvenile's age at the time of the offense, his diminished culpability and capacity for change, the circumstances of the crime, the extent of his participation in the crime, his family, home and neighborhood environment, his emotional maturity and development, the extent that familial and/or peer pressure may have affected him, his past exposure to violence, his drug and alcohol history, his ability to deal with the police, his capacity to assist his attorney, his mental health history, and his potential for rehabilitation.

*Batts*, *supra* at 297.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned and very thorough opinion of the trial court we conclude that there is no merit Appellant's challenge to the discretionary aspects of his sentence. The trial court opinion properly disposes of the questions presented. (*See* Trial Ct. Op., at 4-18 (concluding (1) sentencing court imposed individualized sentence after considering all

- 8 -

evidence presented at trial and sentencing hearings in light of **Miller**, **supra**, and **Batts**, **supra** factors for juveniles convicted of first-degree murder; (2) sentencing court did not punish Appellant for exercising his constitutional right and remaining silent, but rather considered Appellant's remarks throughout sentencing, concluded he consistently shifted blame and failed to accept responsibility, and considered that, among other sentencing factors, in fashioning individualized sentence.)).  **See Glass**, **supra** at 727; **Moury**, **supra** at 171; **Batts**, **supra** at 297.  Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/17/2016

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-23-CR-2355-2010 |
| | : | |
| vs. | : | |
| | : | |
| OMAR RASHAD HOOKS | : | |
| | : | |

Daniel McDevitt, Esquire, on behalf of the Commonwealth
William Wismer, on behalf of the Defendant

## O P I N I O N

Hazel, S.J.                                      FILED:  11/5/15

On April 17, 2010, Defendant, Omar Hooks, then sixteen years of age, shot and killed one Thomas Green.[1] After a jury trial he was found guilty of Murder in the First Degree[2] and the related offenses of Firearms Not to be Carried Without a License[3] and Possession of an Instrument of Crime[4]. On January 31, 2012, a mandatory sentence of life in prison without the possibility of parole for the offense of first degree murder to be followed by an aggregate sentence of twenty-four to sixty months for the remaining offenses was imposed. Defendant pursued his right to a direct appeal. His substantive claims were rejected by the Superior Court and his convictions were affirmed. The matter was remanded for resentencing in light

---

[1] The facts that gave rise to Defendant's conviction are set forth in the Superior Court's Opinion affirming Defendant's conviction and remanding for resentencing in light of Miller v. Alabama, 132 S.Ct. 2455(2012) and Commonwealth v. Batts, 66 A.3d 286 (Pa. 2013). See Commonwealth v. Hooks, 1966 EDA 2012 (filed November 12, 2013).
[2] 18 Pa.C.S.A. §2502
[3] 18 Pa.C.S.A. §6105
[4] 18 Pa.C.S.A. § 907

1

of Miller v. Alabama, 132 S.Ct. 2455(2012) and Commonwealth v. Batts, 66 A.3d 286 (Pa. 2013).

On November 5, 2014 Defendant was re-sentenced to forty (40) years to life for murder of the first degree to be followed by an aggregate sentence of twenty-four (24) to sixty (60) months of incarceration on the remaining offenses. A timely post sentence motion was filed. The motion was followed by an "Amended Post Sentence Motion for Reconsideration and Modification of Sentence" with a memorandum of law in support. A hearing was convened on March 11, 2015.

On April 15, 2015 Defendant's motion for reconsideration was granted and his sentence was modified to the following: thirty-five (35) years to life in prison for Murder in the First Degree with an aggregate sentence of twenty-four (24) to sixty (60) months of incarceration for the remaining offenses to be served concurrently with the sentence imposed for murder. A timely Notice of Appeal was filed on May 13, 2015, necessitating this Opinion. Although Defendant enumerated five separate claims in his "Statement of Matters Complained of on Appeal," his complaints fall into two categories: first, he claims that given its length the sentence imposed is essentially a life sentence and as such it violates the prohibitions against cruel and unusual punishment set forth in the Eight Amendment of the United States Constitution and Article 1, Section 13 of the Pennsylvania Constitution, and second, the Court abused its discretion by considering improper factors and by failing to assign sufficient weight to other "mitigating" factors when determining Defendant's sentence. Each claim is without merit and it is respectfully submitted that Judgment of Sentence should be affirmed.

2

The claim that a "de facto" life sentence has been imposed in this matter and that this sentence is precluded by *Miller* and *Batts* may be summarily dismissed. In Miller v. Alabama, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) the United States Supreme Court held that, as to a juvenile, the imposition of a **mandatory** sentence of life imprisonment without the possibility of parole "poses too great a risk of disproportionate punishment," and as such violates the Eight Amendment's prohibition against cruel and unusual punishment. The Court did not foreclose the possibility of the imposition of a life-without-parole sentence on a juvenile offender but instructed that where a juvenile is sentenced for murder, courts must engage in individualized sentencing, taking into account "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Id. at – ––, 132 S.Ct. at 2471.

In *Batts, supra,* the defendant was sentenced to life without parole after he was found guilty of *inter alia,* first-degree murder and attempted murder. The defendant was fourteen years old when he shot two men at the behest of a fellow, more senior, gang member. One man was killed and the other sustained serious bodily injury. The shooting was unprovoked. The defendant shot the victims as they sat on the steps of a residence's front porch. The Pennsylvania Supreme Court remanded the case for re-sentencing in accordance with *Miller.* The re-imposition of a Life sentence without the parole was not precluded. Rather, the Court instructed that any sentence, whether it be Life without parole or a "minimum/maximum" sentence could be imposed only after certain factors were considered. Specifically:

3

[A]t a minimum [the trial court] should consider a juvenile's age at the time of the offense, his diminished culpability and capacity for change, the circumstances of the crime, the extent of his participation in the crime, his family, home and neighborhood environment, his emotional maturity and development, the extent that familial and/or peer pressure may have affected him, his past exposure to violence, his drug and alcohol history, his ability to deal with the police, his capacity to assist his attorney, his mental health history, and his potential for rehabilitation.

*Batts II, supra,* at 297 (first brackets in original).

On remand, a sentence of Life in prison without the possibility of parole was once again imposed. See Commonwealth v. Batts, 2015 PA Super 187 (Pa. Super. Ct. Sept. 4, 2015). The Court imposed this sentence after consideration of all of the evidence presented at trial and at sentencing in light of the above factors. Additionally, the court recognized that in response to *Miller* our General Assemble enacted 18 Pa.C.S.A. § 1102.1, Sentence of persons under the age of 18 for murder, murder of an unborn child and murder of a law enforcement officer and while this section was not applicable to *Batts* the court was nevertheless guided by its provisions at re-sentencing.[5] On appeal following remand the Superior Court held that the defendant's

---

[5] Section 1102.2 provides:
**(a) First degree murder.--**A person who has been convicted after June 24, 2012, of a murder of the first degree, first degree murder of an unborn child or murder of a law enforcement officer of the first degree and who was under the age of 18 at the time of the commission of the offense shall be sentenced as follows:
    (1) A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life.
    (2) A person who at the time of the commission of the offense was under 15 years of age shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 25 years to life.
**(b) Notice.--**Reasonable notice to the defendant of the Commonwealth's intention to seek a sentence of life imprisonment without parole under subsection (a) shall be provided after conviction and before sentencing.

4

challenge to the trial court's weighing process was waived due to *Batt's* failure to comply with Pa.R.A.P. 2119(f), a requirement whenever an appellant seeks review of the discretionary aspects of sentence. Id. at 8.

In Commonwealth v. Seagraves, 103 A.3d 839 (Pa. Super 2014) the Superior Court did review the discretionary aspects of sentence after a juvenile was re-sentenced to Life without the possibility of parole. In Seagraves, a mandatory sentence of Life without the

---

**(c) Second degree murder.**--A person who has been convicted after June 24, 2012, of a murder of the second degree, second degree murder of an unborn child or murder of a law enforcement officer of the second degree and who was under the age of 18 at the time of the commission of the offense shall be sentenced as follows:

(1) A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of imprisonment the minimum of which shall be at least 30 years to life.

(2) A person who at the time of the commission of the offense was under 15 years of age shall be sentenced to a term of imprisonment the minimum of which shall be at least 20 years to life.

**(d) Findings.**--In determining whether to impose a sentence of life without parole under subsection (a), the court shall consider and make findings on the record regarding the following:

(1) The impact of the offense on each victim, including oral and written victim impact statements made or submitted by family members of the victim detailing the physical, psychological and economic effects of the crime on the victim and the victim's family. A victim impact statement may include comment on the sentence of the defendant.

(2) The impact of the offense on the community.

(3) The threat to the safety of the public or any individual posed by the defendant.

(4) The nature and circumstances of the offense committed by the defendant.

(5) The degree of the defendant's culpability.

(6) Guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing.

(7) Age-related characteristics of the defendant, including:

(i) Age.

(ii) Mental capacity.

(iii) Maturity.

(iv) The degree of criminal sophistication exhibited by the defendant.

(v) The nature and extent of any prior delinquent or criminal history, including the success or failure of any previous attempts by the court to rehabilitate the defendant.

(vi) Probation or institutional reports.

(vii) Other relevant factors.

**(e) Minimum sentence.**--Nothing under this section shall prevent the sentencing court from imposing a minimum sentence greater than that provided in this section. Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing may not supersede the mandatory minimum sentences provided under this section.

**(f) Appeal by Commonwealth.**--If a sentencing court refuses to apply this section where applicable, the Commonwealth shall have the right to appellate review of the action of the sentencing court. The appellate court shall vacate the sentence and remand the case to the sentencing court for imposition of a sentence in accordance with this section if it finds that the sentence was imposed in violation of this section.

5

possibility of parole was initially imposed after a jury found the defendant guilty of first-degree murder[6]. When he committed murder he was seventeen years old. In light of *Miller*, supra, and *Batts*, supra, the case was remanded for resentencing. On remand the trial court again imposed Life without the possibility of parole and a consecutive sentence of eight and one-half to twenty years. Before imposing this sentence the trial court considered the facts and circumstances surrounding the murder that were presented at trial, a pre-sentence investigation, evidence that was brought forth at a decertification hearing and other evidence and testimony offered at sentencing. All of the foregoing were considered in light of the *Miller* and *Batts* "factors." On review the Superior Court affirmed judgment of sentence, concluding that in *Seagraves* 's case the trial court did not abuse it's discretion when it imposed a Life sentence without the possibility of parole after consideration of all of the factors that must be considered following *Miller* and *Batts*. 103 A.3d 839 (Pa.Super. 2014)

In the case *sub judice*, contrary to the Defendant's claim, the sentence imposed was not based exclusively on the seriousness of the offense. Rather, the court imposed an individualized sentence after considering all of the evidence presented at trial and in the course of two sentencing hearings in light of the factors that our courts have identified as essential when imposing sentence where a juvenile defendant has been found guilty of first degree murder. Additionally, the Court was guided by the provisions set forth in Section 1102.1 and by the Sentencing Guidelines that were proposed by the Pennsylvania

---

[6] Seagraves was found guilty of first-degree murder, conspiracy and tampering with evidence. A consecutive sentence of eight and one-half to twenty years of incarceration was imposed consecutive to the Life sentence for the two additional offenses.

6

Commission on Sentencing following the enactment of Section 1102.1[7]. Further, Defendant claims that because he has maintained his innocence throughout the proceedings it was error for the Court to consider his failure to show remorse when imposing this sentence. As will be discussed *infra*, this claim is based in a mischaracterization of the record and therefore no relief is warranted.

Briefly, on the evening of April 10, 2010 the defendant shot and killed Thomas Green. Green, who was unarmed, died after sustaining multiple gunshot wounds. Witnesses at the scene testified that the Defendant, armed with a handgun approached Green and brandished the weapon. Green told the Defendant that he was not intimidated by the gun and the Defendant shot him several times. The Defendant ran from the scene and was arrested in a residence close to the shooting where he was pretending to sleep. Evidence presented at trial supported the conclusion that Defendant shot Green in retaliation for perceived humiliation that he suffered at the hands of Green when the two engaged in horseplay several days before the shooting. Defendant and Green were in a "slap-box fight" and Green smacked the Defendant's glasses off his face. The Defendant was embarrassed. Testimony also tended to prove that before the shooting the Defendant was under the influence of alcohol and/or drugs. In light of this evidence a "diminished capacity" defense was pursued at trial. Ample evidence however, supported the conclusion that although the Defendant may have used alcohol and controlled substances before the murder, he was not under the influence to a degree that rendered him incapable of forming the specific intent to kill. Based on all of the evidence the jury concluded that the Defendant committed a premeditated murder and that

---

[7] The Defendant has a Prior Record Score of 2. Sentencing Guidelines that became effective on September 26, 2014 would recommend a sentence of 492 months (41 years) to Life for a Defendant age 15 to 18, who has a Prior Record Score of 2 and has been found guilty of Murder in the First Degree. See 204 Pa. Code §303.16(b).

7

he acted with the specific intent to kill. After an evaluation of the Defendant, a psychological report authored by Dr. Thomas Swirsky-Sacchetti was submitted by the Defendant in advance of sentencing wherein the Defendant stated that on the night of the killing he travelled from his home in Chester Township to the City of Chester to sell Percocet. See N.T. 114-15.

At Sentencing the Court heard the testimony of the Defendant, several of his friends and members of his family who attested to the progress he has made in his education and his level of maturity while in jail. Members of Mr. Green's family testified as well. See generally N.T. 11/5/14. The Court reviewed the Defendant's juvenile history (Exhibit CS-1), the transcript of the January 31, 2012 sentencing hearing, including victim impact statements (Exhibit CS-2)[8], a report from the December, 2013 psychiatric evaluation conducted at SCI Camp Hill, a 2013 Department of Corrections Initial Classification Summary, a March 2012 Psychiatric Evaluation, a December 2013 Psychological Assessment Report, a December, 2013 Personal Assessment Inventory, a Delaware County Pre-Sentence Investigation report, a Delaware County Psychological Evaluation, a Delaware County Substance Abuse Evaluation, the report of Thomas Swirsky-Sacchetti, Ph.D., ABPP-CN (DS-1), and the Defendant's criminal history. Id. at 135-36. The Court considered the Defendant's familial, educational, physical and mental health history. The Court considered the Defendant's history of alcohol and drug abuse as well as the activities and educational endeavors that he has participated in while incarcerated. The court reviewed all of the evidence offered by the

---

[8] The Notes of Testimony from the January 31, 2012 sentencing hearing were entered into evidence as Exhibit C-S-2. On that day the victim's "aunts" Crystal Chavis and Kim Sullivan, his grandmother Edith Powel, his aunts Katrina Washington and Rhonda Powell, his friend Robin Powell and his daughter Tashana Green offered their testimony. See Exhibit C-S-2.

Defendant and concluded that while the Defendant shows an interest in furthering his education and engaging in activities toward self-improvement while incarcerated, when he has not been held in an institutional setting he has engaged in repeated and continuously escalating criminal and anti-social behaviors. This record demonstrates that for the protection of society and to serve the Defendant's own rehabilitative needs, a lengthy term of incarceration is both appropriate and necessary in this case. See generally 42 Pa.C.S.A. §9771. The following facts support the Court's conclusion.

The Defendant was 21 years old on the day this sentence was imposed and sixteen years, nine months old when he murdered Thomas Green. See N.T. 11/5/14 p. 111. His abuse of alcohol and controlled substances has been consistent throughout his life, beginning at the age of eleven. See N.T. p. 115, 119, 138-40.. While the Defendant pursued a diminished capacity defense, relying on his ingestion of alcohol and marijuana prior to the killing, the jury concluded that he killed with specific intent. Immediately following the murder he was arrested in a nearby residence where he was pretending to sleep. Defendant's intelligence has consistently been measured in the low/average range throughout his life and while he has been diagnosed with personality disorders there is no evidence that supports conclusions that at any point he lacked the capacity to understand the nature and seriousness of his acts or their repercussions. He has been subject to many psychological evaluations in recent years and while he has been diagnosed with personality disorders including personality disorder NOS, no psychosis or major mental illness has been diagnosed, although he has received mental health treatment including psychiatric medications during his most recent incarceration. Id at 120-21, 139.

9

Defendant was raised by a single mother who was previously employed as a correctional officer in the state system and at the time of sentencing was employed by the Elwyn Institute as an administrative assistant and a program specialist. N.T. 11/5/14 p. 53. Before his arrest he lived with his mother in Brookhaven, PA. She maintains contact with her son. Defendant's father was shot and killed most likely during a drug transaction when the Defendant was eleven or twelve years old. Id. at 137. He has three siblings. Defendant began his elementary education at the Community Charter School before he was expelled. He was diagnosed with ADHD. He spent most of his middle school years incarcerated. He has taken and passed high school level courses at SCI Camp Hill and is one credit away from a high school diploma. Id. at 138.

Defendant had five previous arrests beginning at the age of eleven. These arrests culminated in adjudications of delinquency. Bench warrants for violations of probation were issued on three occasions and probation was revoked at least four times. N.T. 5/5/14 p. 120; Exhibit C-S-1. His placements over the years include: the Delaware County Juvenile Detention Center in Lima, the Community Service Foundation in Bucks County, Vision Quest, the Vision Quest Buffalo Soldier Program, Adelphi Village, Northwestern Academy, Glen Mills School and the Abraxas Foundation. See id. at 137-38; Exhibit C-S-1. With the exception of one release for medical treatment Defendant was released from each program for violations of the terms of his probation. Id. at 138. His offenses began with simple assault in 2005 and progressed to aggravated assault and a felony drug offense. In 2005 he was adjudicated delinquent of simple assault. While that charge was pending he committed an aggravated assault against a teacher. He was adjudicated delinquent for possessing drug paraphernalia

10

as a result. In 2008 he was adjudicated delinquent with an underlying offense of possession with intent to deliver. Later, in 2009 he was charged in connection with hit and run and unauthorized use of a motor vehicle. While on probation from this adjudication he committed the murder that is before the Court. N.T. 11/5/14 p. 117-118. Reports indicate that when Defendant was placed in residential settings he did reasonably well, "maintaining appropriate behaviors." Id. at 118-120. When viewed together with all of the other information of record the conclusion that this Defendant is capable of self-improvement in an institutional setting is inscapable. So too, is the conclusion that he has engaged in an escalating pattern of violent criminal behavior and he has failed to embrace the opportunities for rehabilitation that have been offered to date.

Risk factors for future violent behaviors were included in a Psychological Evaluation report that was authored By Jerry M. Lazaroff, Ph.D. on March 21, 2014. Dr. Lazoroff reported: " Mr. Hooks externalizes blame for any wrongdoing and accepts little responsibility for his actions. Moreover, he continues to pose a significant risk to the community for displaying further aggressive acting out due to his lack of remorse, impulsivity, anger dyscontrol, ADHD, learning difficulties, history of aggression and exposure to violence within his home." See id. at 122. Dr. Lazaroff reported as well that the Defendant was responding to medication and in need of additional mental health treatment.

On September 8, 2014 Dr. Thomas Swirsky-Sacchetti, Ph.D., ABPP-CN, performed a comprehensive neuropsychological evaluation at the George Hill Correctional Facility. As part of the evaluation a battery of tests were administered and among others, the Defendant's medical, educational and court records were reviewed. Defendant has had Sickle Cell Disease

11

(SCD) since birth and he was hospitalized on several occasions during his childhood due to this condition. He also has asthma and intermittent hypertension, a condition that arose after his incarceration. Overall, throughout his life, Defendant consistently scored in the low average range in intelligence testing. He began to abuse controlled substances and alcohol at the age of eleven. He was diagnosed with ADHD during his elementary school years and he was placed in special reading classes at the Chester Charter School. His middle school years were spent in and out of placement following several delinquent adjudications. He completed 9th grade during placement at Abraxis.

In his report Dr. Swirsky-Sacchetti explains that " 'silent' cerebral infarcts, *i.e.*, those that occur unbeknownst to the afflicted person or his family, without associated neurological signs, and in the presence of normal neurological evaluation... have been identified on brain MRI in approximately 18-22% of children with SCD." A "heavy preponderance" of these infarcts are located in the frontal and parietal lobes affecting brain functioning and cognitive development. Based on "the literature" and his review of the Defendant's records as well as his generally low-average performance in testing Dr. Swirsky-Sacchetti opined that the Defendant, has in fact experienced cerebral infarcts due to his SCD and as a result he suffers from "moderate brain dysfunction" which affects his executive brain function skills of impulse control. Further, he opined that this condition has led to Defendant's record of juvenile violence and ultimately the commission of murder.

The Court considered Dr. Swirsky-Sacchetti's conclusions and considered as well the studies, evaluations and record review upon which his opinion is based. Although research literature reports that cerebral infarcts have been found through MRI in 18-22% of children

12

with SCD it is equally or perhaps more likely that the Defendant is among the 78-82% of children diagnosed with SCD that do not suffer from cerebral infarcts. The Defendant in this case was never subjected to an MRI and under the circumstances the positive proof that Defendant's SCD is a root cause of his criminal behavior is speculative. See N.T. 11/5/14 p. 126-30. The presence of SCD is an important part of the Defendant's medical history but, without available demonstrative evidence in addition to Dr. Swirsky-Sacchetti's clinical observations, namely an MRI, the Court does assigns little weight to Dr. Swirsky-Sacchetti's conclusion.

Defendant supplemented the record with additional exhibits that were admitted by stipulation. Exhibit D-S-7 , Michigan Life Expectancy Data for Youth Serving Natural Life Sentences is an analysis of data concerning the shortened life expectancy of incarcerated individuals and it implications after Miller. Exhibit D-S-8, There is no Meaningful Opportunity in Meaningless Data: Why It is Unconstitutional to Use Life Expectancy Tables in Post-Graham Sentences published by the UC Davis Journal of Juvenile Law and Policy considers the use of life expectancy tables in Colorado sentencing and concludes use of such tables is inappropriate and contrary to the letter and the spirit of Miller, in that lengthy sentences imposed after consideration of these tables do not provide a meaningful opportunity for release prior to death. Exhibit D-S-9, Give Adolescents the Time and Skills to Mature, and Most Offenders Will Stop and Exhibit D-S-10, Research on Pathways to Desistance suggest that adolescents naturally mature psychologically, socially and cognitively over time and predictions of future offending cannot be based on the severity or frequency of offending during adolescence alone and discuss the efficacy of institutional punishment for juvenile

13

offenders. The Court reviewed these articles with interest when it devised the individualized sentence that was imposed after consideration of the Defendant's unique characteristics and his pattern of behaviors over time.

Factors that militated against the conclusion that Defendant is amenable to treatment played an important part in determining an appropriate sentence. During the course of these proceedings the Defendant has demonstrated a consistent unwillingness to cooperate with authority. On at least two occasions he refused to cooperate with pre-sentence investigations. Id. at 132-33. He made several requests to proceed *pro se* but when hearings were convened to determine whether his waiver of counsel was knowing, intelligent and voluntary he refused to participate in the Court's colloquy. As a result the motion to proceed pro se was denied because the Court was unable to determine whether Defendant's waiver of his right to counsel was knowing, intelligent and voluntary. See id. at 133. In connection with those proceedings psychiatric and psychological evaluations were ordered. Defendant refused to participate in the evaluations. Id. at 133-34. During the course of a hearing conducted via Simultaneous Audio-Visual Communication, he demonstrated his disdain for the Court by getting up and leaving the video conference room during the course of the hearing. Id. at 134. There is no evidence that the Defendant lacks the capacity to cooperate with his attorney or with the evaluators. Rather, the Defendant has consistently demonstrated an unwillingness to cooperate. This attitude is corroborated by the Court's observations. These proceedings have spanned many years and at every turn the Defendant has engaged in obstreperous behavior that reflects an unwillingness to recognize authority. Several psychological evaluations have been performed on this Defendant. It is significant

14

that, in keeping with the foregoing behaviors, results of the Personality Assessment Indicator (PAI), a tool employed to ensure the validity of psychological testing yielded scores cautioning that "test results could only be assumed to be invalid," due to Defendant's responses or lack of responses. Id. at 136.

Finally, the claim that the Defendant has been punished due to his failure to show remorse is meritless. In Commonwealth v. Bowen, 975 A.2d 1120, 1121 (Pa. Super. 2009), upon which Defendant relies, the Superior Court held that "a court may not consider a defendant's silence at sentencing as indicative of his failure to take responsibility for the crimes of which he was convicted... [and] that silence at sentencing may not be the sole factor in determining a defendant's lack of remorse." However, the Court also concluded that on the facts of that case, as in the case *sub judice,* the trial court relied on numerous legitimate factors in imposing sentence and judgment of sentence was affirmed.

In *Bowen,* a sentence falling within the aggravated range of the Sentencing Guidelines was imposed consecutively to a sentence for simple assault that also fell in the aggravated range. The defendant was initially charged with rape and related offenses and was found "not guilty" of rape but "guilty" of simple assault and terroristic threats. At sentencing, the defendant stood silent and the Court considered his silence an indication of a lack of remorse. On appeal the Superior Court considered "[Whether] a [s]entencing court in a criminal matter [may] treat a defendant's silence on the alleged incident as proof of a lack of remorse and then consider it as an aggravating factor?" 975 A.2d at 1122. The Court concluded that silence alone cannot be the basis of a finding that a defendant lacked remorse after his conviction. However, the Court also explained that "it is undoubtedly

15

appropriate for a trial court to consider a defendant's lack of remorse as a factor at sentencing, provided that it is specifically considered in relation to protection of the public, the gravity of the offense, and the defendant's rehabilitative needs." 975 A.2d at 1125.

The differences between the facts of this case and the facts of Bowen are obvious. In *Bowen* the Defendant relied on his Fifth Amendment right and stood silent at both trial and at sentencing. In the case at bar the Defendant chose to address the Court. While Defendant stated that he was "remorseful" and "truly sorry" for what he put his mother through, when read in context a picture of an offender who shifts blame and fails to accept responsibility for his actions emerges. Defendant said:

> First and foremost, I want to offer a sincere apology to the victim's family. And I want to express how much I feel remorseful for everything they had to go through the last few years about their son, her son passing away, her grandson passing away, and things I've followed for so long. And I understand these calamities that been happening, it have to cause so much pain. And I experience this every day, not only my pain that I face with my own family passing away since I've been incarcerated, and had to deal with it. I also—I feel other people's pain. And I feel so remorseful for the fact that I've been put in this situation for the actions of my drug use, things that I can't really, really, really understand and make sense of. That's why I fight with all my might. And I might have acted sometimes bizarre, because I wasn't really sure how to get out of those circumstances that I'm not sure how I even landed in these circumstances because the picture that the Commonwealth had painted of me is not the picture that – I know I'm not to be. I know I'm not—and the picture I know that I want to be. I want to be someone who can help people, someone who can offer advice, someone who can teach, someone that always wanted to go to college and become someone, and make my mother proud, because that's – she was the only one who was always there through all the time I've been in detention,

16

to all the times where I faced emotional problems, where even though I'm not have always told her things in depth about my emotional feelings, my emotional scars that I have, it still is that she's my best friend....

N.T. 11/5/14 pp63-65. Defendant continued on, thanking his mother and family and friends who came to support him. Conspicuously absent from the Defendant's speech was any recognition that Thomas Green was needlessly shot and that his life was lost. This was just the last instance where the Defendant took the opportunity to focus his sympathies on himself and minimize any part that he may have played in this tragic event. The Court recognized that Defendant has displayed this tendency at various times:

> If you look at all of the evaluations, these are the numbers of times that culpability was addressed in different ways by the Defendant. One, didn't commit the offense. Two, not there at the time of the murder, and intends to declare innocence. Says he was intoxicated with alcohol, marijuana, Xanax, and Percocet. Next, facts [of the case were] not properly investigated. Next. It was after he received Discovery in this case that he—it convinced him that he was innocent, and denied carrying a gun that night. Lastly, and this was the most recent one—where he simply says, on 4/17/10, I went to the projects to sell Percocet, and I just don't remember what happened after that. So we've been all over the lie(sic) [lot] with respect to this Defendant's acceptance for his acts, all the way from I didn't do it, to I wasn't sure I did it, to I was under the influence, to the fact that I went to sell Perks, and I just don't remember anything else. And in the middle there's something about, well I figured out that I must be innocent, because I read the Discovery here. If you look at that, and then you listen to what I've just said about some of the concerns that

17

the psychiatrists and the psychologists have about them, they cross-reference very well. He simply doesn't—and this is one of his characteristics—doesn't accept responsibility for any of his actions. And I believe it was the doctor's report, your doctor's report, that suggested- or maybe it was Lazarus (sic)—that he even blamed his mother for violations of probation, because either she was too busy or she wouldn't take him there. There's hardly a time here in all of this, that there is any acceptance of any responsibility—forget the murder, forget that—but of any responsibility for any actions [-] of any identification that you possess any negative characteristics at all.

Id. at 151-53. As the foregoing demonstrates the Court did not consider Defendant's failure to show remorse in the face of claimed innocence for the murder. Rather, his ever changing accounts of the events of April 17, 2010 cast doubt on the credibility of his reporting in various evaluations and pre-sentence investigations and lend support to the PAI conclusion that test results obtained by SCI personnel during psychological evaluations could only be presumed to be invalid.

It is respectfully submitted that the sentencing court considered all of the available evidence in light of the factors established in *Batts*, and subsequently identified by our General Assembly in 18 Pa.C.S.A. § 1102.1, and in the exercise of its discretion imposed a sentence that is consistent with the standards set forth in 42 Pa.C.S.A. 9721(b) and the unique rehabilitative needs of this juvenile offender.

BY THE COURT:

Frank T. Hazel,                                    S.J.