J. S35008/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JAMES B. CANADY, | : | No. 2373 EDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, March 31, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0015102-2007

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., AND MUSMANNO, J.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MAY 24, 2016**

James Canady appeals from the judgment of sentence entered by the Court of Common Pleas of Philadelphia County on March 31, 2015, wherein the sentencing court, on remand, resentenced appellant to 35 years to life imprisonment for his first-degree murder[1] conviction.

The sentencing court set forth the following:

> [Appellant] appeals from the judgment of sentence imposed by this Court on March 31, 2015, of thirty-five years to life imprisonment following remand by the Pennsylvania Supreme Court on July 9, 2013, which vacated [appellant's] life without parole sentence and remanded the matter for re-sentencing in accordance with the holding of ***Commonwealth v. Batts***, 66 [A.3d] 286 (Pa. 2013). ***Commonwealth v. Canady***, 71 A.3d 248 (Pa. 2013). [Appellant] had been convicted on

---

[1] 18 Pa.C.S.A. § 2502(a).

March 31, 2009, of first-degree murder, robbery,[2] graded as a felony of the first degree, criminal conspiracy,[3] and possessing instruments of crime,[4] generally, following a jury trial before this Court and was sentenced March 31, 2009, to life imprisonment followed by a consecutive sentence of twenty-two and one half to forty-five years[`] incarceration on the other charges. [Appellant] thereafter filed a notice of appeal to the Superior Court, which on March 28, 2011, affirmed the judgment of sentence. (1192 EDA 2009). As noted above, the Supreme Court, on July 9, 2013, vacated the life sentence imposed in this matter. It, however, did not vacate the sentences imposed on the other charges and at [appellant's] sentencing hearing, this Court ordered that the aggregate sentence of twenty-two and one-half years' incarceration previously imposed be served consecutive to the sentence of thirty-five years to life imposed on the first degree murder conviction.

The charges herein arose out of an incident that occurred on August 9, 2007, during which [appellant], who was fifteen years old at the time, and Darrin White entered Lu's Grocery Store at about 10:00 a.m. and announced a robbery. Both individuals were wearing masks that covered their faces and [appellant] was armed with a hand gun. The proprietor of the store, Jia Xing Lu, immediately secured himself behind bullet proof glass but White climbed over the enclosure and began struggling with Lu. Lu's daughter, Li Lu, was in an apartment above the store and upon hearing Lu moaning went downstairs to investigate. Once downstairs, she saw her father struggling with White and [appellant] standing near them. [Appellant] pointed a gun at Li Lu and then tossed her to the ground after she pushed his gun away and kicked him.

---

[2] 18 Pa.C.S.A. § 3701(a)(1)(ii).

[3] 18 Pa.C.S.A. § 903(a)(1).

[4] 18 Pa.C.S.A. § 907(a).

As this was occurring, Lu's wife, Yu Zheng Zhen, came downstairs and began assisting her daughter, Li Lu, as she struggled with [appellant]. During the struggle, Li Lu pulled off [appellant's] mask and both women managed to push [appellant] out of the store, at which time they locked the door to the store. Li Lu immediately recognized [appellant] as someone who often patronized the store.

White, who was still struggling with Mr. Lu, managed to free himself from Mr. Lu's grasp but not before Mr. Lu removed his mask. White then called out to [appellant] after which he managed to unlock the front door to the store. When White unlocked the door, [appellant] pushed the door open and shot Mr. Lu twice, killing him. Both assailants then fled.

After the police arrived, Li Lu told them that the shooter was the same person who had robbed the store some months before and pointed at his residence. Police immediately went to that location and secured the premises. They then obtained an arrest warrant for [appellant] who surrendered three days after the incident.

Trial court opinion, 8/24/15 at 1-3.

Appellant raises the following issue for our review:

Is the appellant entitled to a remand for resentencing since his sentence of 35 years to life is excessive, not reflective of his character, history and condition and, therefore, manifestly unreasonable?

Appellant's brief at 4.

Appellant challenges the discretionary aspects of his sentence.

[T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. . . . [A]n abuse of discretion is more than a mere error of

judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

**Commonwealth v. Moury**, 992 A.2d 162, 169-170 (Pa.Super. 2010)

(citation omitted).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. **Commonwealth v. Sierra**, [752 A.2d 910, 912 (Pa.Super. 2000)]. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

[W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Moury*, 992 A.2d at 170 (citation omitted).

Here, the record reveals that appellant filed a timely notice of appeal, properly preserved his sentencing issue in his post-sentence motion, and included a Pa.R.A.P. 2119(f) statement in his brief. Therefore, we must now determine whether appellant raises a substantial question.

We determine whether an appellant raises a substantial question on a case-by-case basis. *Commonwealth v. Swope*, 123 A.3d 333, 338 (Pa.Super. 2015) (citation omitted). "A substantial question exists only when an appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (citation omitted).

> In determining whether a substantial question exists, this Court does not examine the merits of whether the sentence is actually excessive. Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

*Id.* at 340 (citation omitted).

Here, in his Pa.R.A.P. 2119(f) statement, appellant takes somewhat of a kitchen-sink approach in an attempt to raise a substantial question of excessiveness. For example, appellant claims, among other things, that the

35-years-to-life sentence that the sentencing court imposed is excessive because:  it is not reflective of appellant's character, history, and conditions; the evidence at the re-sentencing hearing proved conclusively that appellant has made substantial efforts to rehabilitate himself; the sentence was impermissibly based on the nature and circumstances of the murder; appellant is not the same person who murdered the victim; the sentencing court failed to state sufficient reasons for imposing the sentence; the sentencing court failed to satisfy the factors necessary to impose a sentence of total confinement; the sentence is not consistent with public protection or the gravity of the offense as it relates to the impact on the life of the victims and the community and appellant's rehabilitative needs.  (Appellant's brief at 19-20, Pa.R.A.P. 2119(f) statement).  Appellant, however, fails to advance a colorable argument that the sentencing court imposed a sentence inconsistent with the Sentencing Code or contrary to the fundamental norms that underlie the sentencing process.  In fact, contrary to appellant's claim of excessiveness, at re-sentencing, the sentencing court imposed the minimum sentence available to appellant on his first-degree murder conviction.

The record reflects that appellant committed first-degree murder in 2006 when he was 15 years old.  After being convicted by a jury, the sentencing court imposed a mandatory life sentence without the possibility of parole on March 31, 2009.  On July 9, 2013, our supreme court vacated

appellant's mandatory life sentence and remanded to the sentencing court for resentencing in a manner consistent with **Commonwealth v. Batts**, 66 A.3d 286 (Pa. 2013) ("**Batts II**").[5]

Our supreme court decided **Batts II** in response to the United States Supreme Court's June 25, 2012 decision in **Miller v. Alabama**, ___ U.S. ___, 132 S.Ct. 2455 (2012). In **Miller**, the Supreme Court held "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders." **Id.** ___ U.S. at ___, 132 S.Ct. at 2469 (citation omitted). The Court declined to categorically ban the sentence of life without parole for juveniles, but explained that it believed that such a sentence would be "uncommon." **Id.** As such, the Court confirmed that its holding "d[id] not foreclose a sentencer's ability to make that judgment in homicide cases, [but required] it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." **Id.** (footnote omitted).

On October 25, 2012, and in response to **Miller**, a new statutory sentencing scheme took effect for juveniles convicted of murder. Under that statute, a person at least 15 but under 18 years of age may receive "a term of life imprisonment without parole, or a term of imprisonment, the

---

[5] Consistent with this court's most recent opinion in **Commonwealth v. Batts**, 125 A.3d 33 (Pa.Super. 2015), **appeal granted, in part**, 2016 Pa.LEXIS 823 (Pa. 2016) (**see** footnote 6 **infra**), our supreme court's opinion in **Commonwealth v. Batts**, 66 A.3d 286 (Pa. 2013), will be referred to as **Batts II**.

minimum of which shall be at least 35 years to life." 18 Pa.C.S.A. § 1102.1(a)(1). In determining whether a life-without-parole sentence should be imposed pursuant to this statute, however, the sentencing court must consider various individualized factors regarding the nature and circumstances of the offense; defendant's age, mental capacity, maturity, culpability, and degree of criminal sophistication; and the success or failure of any prior rehabilitative attempts. *See* 18 Pa.C.S.A. § 1102.1(d). The statute also permits the sentencing court to consider any other factors that it deems relevant to its assessment. *See* 18 Pa.C.S.A. § 1102.1(d)(7)(vii).

Here, although the sentencing court was directed to re-sentence appellant in accordance with the ***Batts II*** factors for consideration, the available sentences set forth in Section 1102.1(a)(1) did not apply to appellant because appellant was convicted of first-degree murder in 2009, before the October 12, 2012 effective date of Section 1102.1. Consequently, appellant was subject to the version of Section 1102 that was in effect at the time of his March 31, 2009. Accordingly,

> [i]n ***Batts II***, our Supreme Court explained that ***Miller***'s holding is narrow, ***i.e.***, mandatory sentences of life imprisonment without the possibility of parole are not constitutional when imposed on juveniles convicted of murder. It accordingly rejected [the] argument that ***Miller*** rendered Section 1102 unconstitutional in its entirety as applied to juveniles, reasoning as follows.
>
> > Section 1102, which mandates the imposition of a life sentence upon conviction for first-degree murder, ***see***

18 Pa.C.S.[A.] § 1102(a), does not itself contradict *Miller*; it is only when that mandate becomes a sentence of life-without-parole as applied to a juvenile offender--which occurs as a result of the interaction between Section 1102, the Parole Code, *see* 61 Pa.C.S.[A.] § 6137(a)(1), and the Juvenile Act, *see* 42 Pa.C.S.[A.] § 6302 --that *Miller's* proscription squarely is triggered. *Miller* neither barred imposition of a life-without-parole sentence on a juvenile categorically nor indicated that a life sentence with the possibility of parole could never be mandatorily imposed on a juvenile. Rather, *Miller* requires only that there be judicial consideration of the appropriate age-related factors set forth in that decision prior to the imposition of a sentence of life imprisonment without the possibility of parole on a juvenile.

*Batts II, supra* at 295-296 (some citations omitted). The Court also noted that it would not expand the holding of *Miller* absent a common law history or a legislative directive. *Id.* at 296 (citation omitted). Accordingly, our Supreme Court remanded to the trial court with instructions to consider the following age-related factors in resentencing [the *Batts II*] Appellant.

[A]t a minimum [the trial court] should consider a juvenile's age at the time of the offense, his diminished culpability and capacity for change, the circumstances of the crime, the extent of his participation in the crime, his family, home and neighborhood environment, his emotional maturity and development, the extent that familial and/or peer pressure may have affected him, his past exposure to violence, his drug and alcohol history, his ability to deal with

> the police, his capacity to assist his attorney, his mental health history, and his potential for rehabilitation.

***Commonwealth v. Batts***, 125 A.3d 33, 38-39 (Pa.Super. 2015), ***appeal granted***, ***in part,*** 2016 Pa.LEXIS 823 (Pa. 2016)[6] (citations omitted).

---

[6] On April 19, 2016, our supreme court granted the petition for allowance of appeal, limited to the following issues:

> 1. In ***Miller v. Alabama***, the U.S. Supreme Court outlawed mandatory life without parole for juveniles (LWOP), and instructed that the discretionary imposition of this sentence should be "uncommon" and reserved for the "rare juvenile offender whose crime reflects irreparable corruption."
>
>    i. There is currently no procedural mechanism to ensure that juvenile LWOP will be "uncommon" in Pennsylvania. Should this Court exercise its authority under the Pennsylvania Constitution to promulgate procedural safeguards including (a) a presumption against juvenile LWOP; (b) a requirement for competent expert testimony; and (c) a "beyond a reasonable doubt" standard of proof?
>
>    ii. The lower court reviewed the Petitioner's sentence under the customary abuse of discretion standard. Should the Court reverse the lower court's application of this highly deferential standard in light of ***Miller***?

***Commonwealth v. Batts***, 2016 Pa.LEXIS 823 (Pa. April 19, 2016).

Here, the sentencing court held an extensive resentencing hearing. (Notes of testimony, 3/31/15 at 1-90.) During that hearing, in order to support his rehabilitation contention, appellant presented expert testimony, as well as testimony from his family members and individuals involved in inmate rehabilitation programs who have worked with appellant. (*See id.*) The sentencing court also acknowledged that it had read family court records, appellant's pre-sentence report, appellant's mental evaluation, all records from the Pennsylvania Department of Corrections, appellant's sentencing memo, appellant's expert report, letters from individuals involved in inmate rehabilitation programs who have worked with appellant, as well as the Commonwealth's sentencing memorandum. (*Id.* at 4-5.) During the hearing, appellant also addressed the court. (*Id.* at 59-63.)

At the conclusion of the hearing, and immediately prior to imposing sentence, the sentencing court acknowledged that it had reviewed *Batts II*, as well as the new sentencing statute enacted in response to *Miller* and signed into law on October 25, 2012. During the sentencing hearing, the sentencing court correctly stated that because appellant committed his crimes prior to *Batts II*, the sentences set forth in the October 25, 2012 sentencing statute did not apply to appellant, and the court, therefore, was free to re-sentence appellant to a mandatory life sentence on the first-degree murder conviction. (Notes of testimony, 3/31/15 at 87.) Nevertheless, the sentencing court sentenced appellant to the mandatory

sentence under the sentencing scheme that became effective on October 25, 2012, which is 35 years to life. Under the circumstances of this re-sentencing, then, appellant's excessiveness complaint is unfounded because even though appellant was not entitled to receive the benefit of being resentenced under the October 25, 2012 statute, he received the mandatory sentence under that statute, which was the minimum sentence that could have been imposed. Therefore, appellant cannot set forth a plausible argument that the mandatory minimum sentence imposed is unreasonably excessive.

In a final effort to raise a substantial question of excessiveness, appellant claims that the trial court abused its discretion by ordering that the sentences previously imposed on the robbery, criminal conspiracy, and possessing instruments of crime convictions[7] run consecutive to the sentence imposed on the first-degree murder conviction. Appellant claims that because he will be required to serve 57½ years before he can be considered for parole, the aggregate sentence violates **Miller** and **Batts II** because it is essentially a life sentence. (Appellant's brief at 21, Pa.R.A.P. 2119(f) statement.) Appellant's reliance on those cases is misplaced, and the proposition he claims the cases stand for is misguided. Neither case concerned the imposition of consecutive sentences for multiple

---

[7] The trial court is correct that any issue as to the imposition of these separate sentences was resolved by this court's affirmance of the sentences in appellant's first appeal to this court.

crimes committed by a juvenile. Both cases, however, concerned the requisite considerations a sentencing court must take when a juvenile faces a life sentence for murder. Thus, neither case stands for the proposition that a sentencing court is prohibited from sentencing a juvenile to life imprisonment, as appellant would like us to believe. Contrary to appellant's contention, then, the sentence imposed does not violate **Miller** or **Batts II**.

In summary, because appellant has advanced no plausible argument as to why his sentencing is unreasonable considering the nature of his crime and the length of his sentence, he has failed to raise a substantial question.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/24/2016

- 13 -