J-A27033-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TONITA HENDERSON | |
| Appellant | No. 860 WDA 2013 |

Appeal from the Judgment of Sentence Entered February 5, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division at No: CP-02-CR-0015719-2011

BEFORE:  BOWES, OLSON, and STABILE, JJ.

MEMORANDUM BY STABILE, J.                    **FILED JULY 21, 2016**

Appellant, Tonita Henderson, appeals from the judgement of sentence entered February 5, 2013, following her convictions of two counts of robbery, one count of receiving stolen property, and one count of criminal conspiracy.[1]  Upon review, we affirm.

On November 29, 2011, Appellant was charged with two counts of robbery, one count of receiving stolen property, and one count of criminal conspiracy.[2]  At the time she was charged, Appellant was seventeen years old and less than three months from her eighteenth birthday.  Appellant's

_____

[1] 18 Pa.C.S.A. §§ 3701, 3925, and 903, respectively.

[2] Unless another source is cited, these facts are taken from pages one through four of the trial court's November 26, 2014 Pa.R.A.P. 1925(a) opinion.

case was initiated in criminal court. Appellant petitioned the trial court to transfer her case to juvenile court. Following a decertification hearing, her petition was denied. A non-jury trial was held on November 7, 2012, after which Appellant was found guilty of all charges. The trial court requested a presentence investigation report (PSI) for use in fashioning Appellant's sentence. The PSI included Appellant's prior juvenile adjudications. Following a sentencing hearing, the trial court sentenced Appellant to a period of incarceration of not less than six and one-half nor more than thirteen years to be followed by a period of probation of seven years. Appellant filed post-sentence motions which were denied. Appellant timely appealed to this Court and, as ordered, filed a Rule 1925(b) statement wherein she raised seven claims of error. The trial court issued a Pa.R.A.P. 2915(a) opinion.

Appellant now raises four issues for our review:

1. Whether the juvenile decertification process is unconstitutional as it does not allow for the minor child to have a jury conclude beyond a reasonable doubt that the juvenile should be subjected to an adult penalty beyond the juvenile statutory maximum penalty in violation of the minor child's Sixth Amendment rights?

2. Whether placing the burden of proof on a juvenile defendant in a decertification process violates both the juvenile's procedural and substantive due process rights?

3. Whether the process of obtaining a second expert witness violated Miss Henderson's Constitutional rights under the Equal Protection Clause of the Fourteenth Amendment?

4. Whether Section 303.6 of the Sentencing Guidelines violates the 8th Amendment to the United States Constitution and Article 1, Section 13 of [sic] Constitution of the Commonwealth of Pennsylvania in light of *Roper v. Simmons*, [543 U.S. 551 (2005),] *Graham v. Florida*, [560 U.S. 48 (2010),] and *Miller v. Alabama*, [132 S.Ct. 2455 (2012)]?

Appellant's Brief at 5-6.

Initially, we note that an appellant bears a heavy burden to prove a statute unconstitutional. "[A] statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution." *Commonwealth v. Cotto*, 753 A.2d 217, 219 (Pa. 2000). Additionally, "there is no constitutional guarantee to special treatment for juvenile offenders. Any right to treatment as a juvenile is derived from statutory law and is defined by the legislature." *In Interest of J.F.*, 714 A.2d 467, 470 (Pa. Super. 1998).

The legislature, through the Juvenile Act, placed adjudication of delinquent acts when the defendant is a child automatically within the jurisdiction of juvenile court. 42 Pa.C.S.A. § 6322(a). However, Section 6302 of the Juvenile Act excludes robbery from the definition of a delinquent act where, as in this case, a deadly weapon was used in the commission of the offense. *See* 42 Pa.C.S.A. § 6302 "Delinquent Act" (2)(ii)(D); *see also* 18 Pa.C.S.A. § 3701 (relating to robbery). Prosecution for an offense excluded from the definition of a delinquent act commences in criminal court rather than in juvenile court. 42 Pa.C.S.A. § 6322(a); *see also Commonwealth v. Ramos*, 920 A.2d 1253, 1258 (Pa. Super. 2007)

("[W]hen the crime involved is one excluded from the Juvenile Act's definition of a delinquent crime, the charge is automatically within the jurisdiction of the criminal court and jurisdiction is presumptively proper.").

When a criminal court has jurisdiction over a crime committed by a juvenile pursuant to 42 Pa.C.S.A. § 6322(a), the juvenile may request that her case be decertified, *i.e.*, removed to the jurisdiction of juvenile court. ***Commonwealth v. Sanders***, 814 A.2d 1248, 1250 (Pa. Super. 2003). This process has been upheld as constitutional by this Court and our Supreme Court. ***See Cotto***, 753 A.2d at 217, 222 (holding as constitutional the 1995 Amendments to the Juvenile Act which vest original jurisdiction in the criminal courts for specified violent felonies and granting the decision-maker discretion in determining whether to transfer a direct file case to juvenile court); ***see also Commonwealth v. Aziz***, 724 A.2d 371, 374 (Pa. Super. 1999), ***appeal denied***, 759 A.2d 919 (Pa. 2000) ("We find that the amendments to the Act, which cause juveniles accused of the enumerated offenses to appear first in criminal court, are not arbitrary and instead are rationally related to the statute's objectives.").

Appellant first argues that the decertification process is unconstitutional as violating the Sixth Amendment because a judge rather than a jury decides decertification. Appellant bases this claim on our United States Supreme Court's decision in ***Apprendi v. New Jersey***, 530 U.S. 466 (2000) which, in her words, "conclude[es] that a sentencing factor that has the potential to enhance the punishment triggers Sixth Amendment

- 4 -

protections. . . ." Appellant's Brief at 15. Essentially, Appellant argues that the denial of decertification is a factor that could enhance a sentence beyond the statutory maximum allowed for a juvenile and, therefore, under ***Apprendi***, only a jury may deny decertification. Appellant's Brief at 19.

The United States Supreme Court's decision in ***Apprendi*** concerned a statute that authorized a judge to increase the maximum sentence after a jury's verdict based on the judge's **finding**, by a preponderance of the evidence, of the fact that the crime was racially motivated. ***Apprendi***, 120 S.Ct. at 2348. We previously summarized the rule established by ***Apprendi*** and its progeny as follows.

> In the watershed ***Apprendi*** case, the Supreme Court held that any fact except a prior conviction that increases the range of punishment beyond the statutory maximum penalty for that crime must be charged in an indictment, submitted to the jury, and proven beyond a reasonable doubt. The Court further defined the term statutory maximum in ***Blakely v. Washington,*** 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). According to the ***Blakely*** Court, the statutory maximum is the maximum sentence a court can impose based solely on the facts reflected by the jury verdict or admitted by the defendant during his guilty plea.

***Commonwealth v. Stokes***, 38 A.3d 846, 858-59 (Pa. Super. 2011).

Appellant's reliance on ***Apprendi*** is misplaced. Decertification is a legislatively established procedure whereby a judge must consider a juvenile's amenability to treatment within the juvenile system as delineated by statutorily defined factors. 42 Pa.C.S.A. § 6355(a)(4)(iii). Decertification is not a fact that increases the maximum penalty that may be imposed as

already determined by a jury's verdict or an accused's guilty plea. Indeed, a judge does not make any findings of fact regarding elements of the crimes charged during the decertification process. Further, there is no jury involved in this process. *Apprendi*, therefore, is factually and legally distinguishable from the instant case. As such, Appellant is not entitled to relief on her first issue.

Appellant next argues that placing the burden of proof on a juvenile defendant in the decertification process violates both the juvenile's procedural and substantive due process rights. In *Cotto*, our Supreme Court addressed and rejected this issue and held as follows.

> [T]he legislature has determined in its judgment that, in certain instances, violent felonies in addition to murder are sufficiently serious to merit vesting original jurisdiction in the criminal courts, while affording the defendant an opportunity to show that his is the exceptional case warranting juvenile treatment.
>
>   . . . .
>
> . . . [T]he legislature's informed determination that juveniles fifteen years of age and older who commit such offenses are not initially amenable to rehabilitation under the Juvenile Act, unless they prove otherwise by a preponderance of the evidence, is equally reasonable. There is nothing in the Constitution to prevent the legislature from making such a judgment.

*Cotto*, 753 A.2d at 223-24.

Appellant acknowledges that *Cotto* is controlling on this issue, but asks us to reconsider our Supreme Court's holding. Appellant's Brief at 24. This Court, however, has a "duty and obligation to follow the decisional law of [the Supreme Court of Pennsylvania]." *Commonwealth v. Shaffer*, 734

A.2d 840, 844 n.6 (Pa. 1999). Because **Cotto** considered and resolved Appellant's second issue, we are bound by our Supreme Court's holding in **Cotto**, and Appellant is not entitled to relief on this claim.[3]

Appellant contends in her third issue that requiring her to petition the trial court to grant funds for a second expert witness violated her constitutional rights under the Equal Protection Clause of the Fourteenth Amendment. Specifically, Appellant argues that as a client of the Allegheny County Office of Conflict Counsel (OCC), she is similarly situated to clients of the Public Defender's Office (PDO), as they are all individuals who qualify for but cannot afford representation. Appellant alleges that, because a second expert witness could have been obtained had she been represented by the PDO given the PDO's self-regulated budget, she was placed in a second class where she was required to petition the court for funds for an additional expert witness as a client of the OCC. Appellant's Brief at 31-32. Appellant claims this violated her Equal Protection Rights because, under the Fourteenth Amendment, "like persons in like circumstances will be treated

_____

[3] To the extent that Appellant relies on **Roper**, **Graham**, and **Miller** to support her argument that "juveniles are constitutionally distinct from adults," and therefore it is unconstitutional to shift the burden of proof in decertification onto juvenile defendants, these cases are easily distinguishable from the one *sub judice* as the foregoing only address juvenile sentencing. Appellant's Brief at 24; **Commonwealth v. Batts**, 125 A.3d 33, 37 (Pa. Super. 2015). None of these cases pertains to the juvenile decertification process.

similarly" unless "there be a rational basis for policy distinctions between similarly situated individuals." Appellant's Brief at 30.

The starting point of an equal protection analysis is a determination of whether the State has created a classification for unequal distribution of benefits or imposition of burdens. *Commonwealth v. Parker White Metal Co.*, 515 A.2d 1358 (Pa. 1986). Appellant claims to be a member of a class consisting of indigent persons represented by the OCC who are similarly situated to those indigent persons represented by the PDO. Appellant claims differential treatment as a member of the OCC class because her request for a second expert requires court approval, whereas approval is not required for those represented by the PDO. It is established that the action of state courts may be regarded as State action within the meaning of the Fourteenth Amendment. *See Shelley v. Kramer*, 334 U.S. 1 (1948). The question preliminarily which remains to be answered however, is whether the Appellant's challenge to the trial court's action was based upon differentiating her in a class from others similarly situated. Appellant fails to satisfy this preliminary consideration to sustain an equal protection claim.

While Appellant challenges the action of the trial court in refusing a second expert, Appellant does not explain how the trial court created separate classifications of people for making expert witness determinations for equal protection purposes. The decision to deny Appellant a second expert was based upon the trial court's individualized review of Appellant's

request for a second expert. The request was denied after the trial court determined Appellant was merely shopping for another expert to provide a more favorable opinion than the first expert that was court funded. The trial court correctly noted, citing **Commonwealth v. Chester**, 733 A.2d 1242, 1252 (Pa. Super 1999), that a defendant is not entitled to unlimited court appointed experts until he finds one that renders the opinion he desires. This individualized determination was not based upon any class created by the trial court. Nor does Appellant establish that other persons represented by the OCC would have had similar requests for expert approval declined as a result of their membership in her purported class. Moreover, Appellant provides no proof that the PDO in fact would have retained a second expert on her behalf to establish disparate treatment of her as a purported class member represented by the OCC. "A person who brings an action under the Equal Protection clause 'must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual.'" **Murray v. Pittsburgh Bd. of Public Educ.**, 919 F. Supp. 838, 847 (W.D. Pa. 1996) (citation omitted). A review of Appellant's claim reveals no more than an individualized determination on whether a second expert would be approved. This individualized determination was not dependent upon membership in a class.

It further is conceded that representation of Appellant by the OCC was necessitated by a conflict within the PDO office. To the extent Appellant can

claim the establishment of similarly situated classes, a representational conflict within the PDO necessitating separate representation by the OCC, is grounded upon a rational basis that does not offend equal protection. A State can, consistent with the Fourteenth Amendment, provide for differences so long as the result does not amount to a denial of due process or invidious discrimination. **Douglas v. California**, 372 U.S. 353 (1963). Absolute equality is not required. **Id.** As Appellant fails to establish the essential predicates for an equal protection claim, her claim fails.[4]

Appellant's final issue is that the Pennsylvania Sentencing Guidelines are unconstitutional as applied to juvenile defendants. Appellant's Brief at 42. Appellant argues that, together, **Roper**, **Graham**, and **Miller** established the rule that, under the Eighth Amendment, criminal procedure laws, including sentencing guidelines, must consider an offender's age. Appellant's Brief at 39-40. Appellant claims that it is therefore unconstitutional for Section 303.6 of the Pennsylvania Sentencing Guidelines[5] to mandate using her juvenile offenses to calculate her prior record score for use in criminal court. Appellant's Brief at 34-38.

_____

[4] In light of our disposition of Appellant's equal protection claim, we need not determine whether Appellant properly preserved this issue due to inadequate briefing.

[5] Section 303.6 of the Pennsylvania Sentencing Guidelines provides, in pertinent part, as follows:
*(Footnote Continued Next Page)*

Appellant's claim that the United States Supreme Court decisions in *Roper*, *Graham*, and *Miller* require that our sentencing guidelines, as applied to juveniles, be held unconstitutional requires impermissible extensions and leaps of logic from the holdings in those cases. *Roper* held that the death penalty is disproportionate punishment for offenders under 18, and that imposing such punishment was a violation of the Eight Amendment. When a juvenile commits a heinous crime, the State can exact forfeiture of some of the most basic liberties, but the State cannot extinguish his life. In *Graham* the Court held that the Eighth Amendment does not permit a juvenile offender to be sentenced to life in prison without parole for a non-homicide crime. The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide. While a State need not guarantee the offender eventual release, if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term.

*(Footnote Continued)* ───────────────

> Prior juvenile adjudications are counted in the Prior Record Score when the following criteria are met: (1) The juvenile offense occurred on or after the offender's 14th birthday, and (2) There was an express finding by the juvenile court that the adjudication was for a felony or one of the Misdemeanor 1 offenses listed in § 303.7(a)(4).

204 Pa. Code § 303.6.

In *Miller*, the Court recognized that *Roper* and *Graham* established that children are constitutionally different from adults for sentencing purposes and that its individualized sentencing decisions make clear that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles. By mandating that all children convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes, such sentencing schemes violate the principle of proportionality, and hence, the Eighth Amendment's ban on cruel and unusual punishment. Our State Supreme Court recently clarified that "*Miller*'s holding is narrow," and that it "would not expand the holding of *Miller* absent a common law history or a legislative directive." *Batts*, 125 A.3d at 38. The Court specifically held that "*Miller* requires only that there be judicial consideration of the appropriate age-related factors set forth in that decision prior to the imposition of a sentence of life imprisonment without the possibility of parole on a juvenile." *Id.* The Court declined to change the "legal consequences for the actions of minors" based on the "policy considerations" raised by *Miller* stating, "[i]n Pennsylvania, subject to the limits of the Constitution, such matters are generally reserved, in the first instance, to the General Assembly." *Commonwealth v. Hale*, 2015 WL 9284110, at *4 (Pa. 2015).

The common thread running through *Roper*, *Graham*, and *Miller*, is that the harshest of penalties imposed upon juveniles in those cases cannot

withstand scrutiny for proportionality under the Eighth Amendment. The rationales for rejecting the outer limits of sentencing in those cases in no manner can be construed as an invitation to invalidate consideration of all factors that may bear upon an appropriate sentence for a juvenile sentenced as an adult as in this case. Moreover, requiring consideration of a juvenile's prior offenses to calculate a prior record score is not the same as mandating a certain sentence. The weight given a prior record score goes to the discretion of a sentencing court in fashioning an appropriate sentence.[6] The Court in **Roper**, **Graham**, and **Miller**, did not disturb a sentencing court's ability to consider all factors when sentencing a juvenile. In fact, those decisions emphasize the need for individualized consideration in juvenile sentencing, a point that cuts directly against the argument Appellant presently makes.

As previously stated, "a statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution." **Cotto**, 753 A.2d at 219. In **Commonwealth v. Smith**, 481 A.2d 1365 (Pa. Super. 1984), this Court addressed the contention that under the Juvenile Act, juvenile records and adjudications

_____

[6] To the extent Appellant's argument raises a challenge to the discretionary aspects of her sentence, Appellant has made no such claim, and if her argument could be considered as raising such a claim, we would deem it waived for not properly preserving this issue for review. **See Commonwealth v. Levy**, 83 A.3d 457 (Pa. Super. 2013).

should not be regarded as criminal acts for purposes of sentencing. In rejecting that proposition, we stated,

> The intention of the Legislature is clear in its adoption of the policy which not only allows but requires examination of a defendant's juvenile record in fashioning appropriate sentences.
>
>  . . . .
>
> It is clearly the intent of the Legislature that a child who continues his pattern of serious and violent anti-social activity into adulthood, should not receive the benefit of a cloak of immunity regarding that behavior, when it is relevant to predicting future behavior and the public safety is at risk.
>
> Until and unless the mandate to utilize juvenile records as a sentencing aid is legislatively reversed, it remains incumbent upon the sentencing courts to obey it.

*Id.* at 1366. In light of the foregoing and the legislative purpose to be served by permitting consideration of prior juvenile records in sentencing, we decline Appellant's invitation to extend the holdings of **Roper**, **Graham**, and **Miller** to find that Section 303.6 of the Pennsylvania Sentencing Guidelines is unconstitutional as applied to juveniles.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/2016

- 14 -